(109 App. Div. 626)

## NELSON v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department.   December 8, 1905.)

1. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE.
  Where plaintiff was struck and injured at an unguarded and unpro-
  tected railroad crossing by a train which approached the crossing at a
  rate of 40 miles an hour without any warning, such facts warranted
  the submission of the question of defendant's negligence to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
  Plaintiff, while driving a team and a heavy van along a village street,
  stopped at a point 5 feet distant from the nearest rails of a double track
  at a railroad crossing at a point where he had an unobstructed view to
  the east along the tracks of 300 feet.   After neither hearing nor seeing
  any train he proceeded to cross, when he was struck by a train approach-
  ing him from the east running on the most distant tracks.   Held, that
  plaintiff was not guilty of contributory negligence as a matter of law,
  though the track extended to the east in a straight line for a distance of
  1,000 feet, being somewhat obstructed at a point 300 feet from the crossing.

Appeal from Trial Term, Queens County.

Action by Fritz Nelson against the Long Island Railroad Company.
From a judgment in favor of defendant entered on a directed verdict,
plaintiff appeals.   Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS,
RICH, and MILLER, JJ.

William J. Leitch, for appellant.
William C. Beecher, for respondent.

JENKS, J.   The action is for negligence.   At the close of the plain-
tiff's case the defendant did not make any motion.   At the close of
the whole case the defendant moved to dismiss the complaint and for
a direction of a verdict.   The learned trial court reserved decision on
the motion until after verdict, and then submitted the case generally
to the jury, which found for the plaintiff.   Thereupon the defendant
moved to set aside the verdict and for a new trial.   The court then
granted the reserved motion to direct a verdict, under exception.   This
appeal is from the judgment entered upon the directed verdict for the
defendant.

At 7:30 a. m. of July 17, 1903, the plaintiff, driving a team of horses
drawing a heavy van along Carlton avenue in the former village of
Arverne, approached the double railroad tracks of the defendant, that
ran east and west, and were crossed by the said avenue, that ran north
and south.   In attempting to cross the tracks his team and van were
struck by the locomotive engine of a train running westerly on the
further track, and he was severely injured.   There was evidence to
warrant a finding that the train was running very fast—at a rate
of 40 miles an hour—and that it approached this crossing, which was
unguarded and unprotected, without any warning.   Hence it could not
be determined as matter of law that there was no proof of defendant's
negligence to submit to the jury.   Dyer v. Erie Railway Co., 71 N. Y.
228; Thompson v. N. Y. C. & H. R. R. R. Co., 110 N. Y. 636; 17
N. E. 690; Vandewater v. N. Y. & N. E. R. R. Co., 135 N. Y. 583, 32

N. E. 636, 18 L. R. A. 771; Hickey v. N. Y. Central & H. R. R. R. Co., 8 App. Div. 123, 40 N. Y. Supp. 484.

The remaining question is whether the plaintiff was chargeable with contributory negligence as a matter of law. It cannot be so charged on the ground that he gave no evidence of reasonable care on his part; for he testifies that at a point 5 feet distant from the nearer railroad tracks he stopped, looked both to the east and the west and listened, and that he only proceeded after neither seeing any train nor hearing any indications from sound or signal of any approaching train, and that as he came to the nearer tracks he looked again and did not see any train. Henavie v. N. Y. C. & H. R. R. R. Co., 166 N. Y. 280, 284, 59 N. E. 901; Judson v. Central Vermont R. R. Co., 158 N. Y. 597, 53 N. E. 514. But the learned and able counsel for the defendant contends that the assertion of the plaintiff that he thus looked twice is incredible as a matter of law. It is pointed out that the tracks from the crossing extended easterly in a straight line for more than 1,000 feet, and that all of the witnesses who testified on this point said that there was a clear view for that distance in that direction from where the plaintiff stopped out of precaution. But the evidence does not establish conclusively that the plaintiff had a clear view for the 1,000 or more feet, inasmuch as he testifies that from his viewpoint at the place of his stop he could see only 300 feet, and that he was prevented from further vision by obstructions—a house, and a big sign, and then a fence and telegraph poles. There is evidence that these objects existed in the general direction of a view taken from the point in question. Therefore the jury could have concluded that the view of the plaintiff was thus obstructed, and that although he used due care, and in the exercise thereof looked, in the sense of to see, he failed to see any approaching train. The approaching train might have been much more than 300 feet distant, and yet, running at the rate of 40 miles an hour, or 58 feet a second, have reached the crossing within the time that the plaintiff, after starting up his heavy van, which he said necessarily moved slowly, passed over the distance of 5 feet to the nearer tracks, over the tracks, and across the intervening space of 7.5 feet to the further tracks. In such case he may have looked ever so keenly and yet not have seen the train. It seems to me, then, that the testimony of the plaintiff is not incredible as a matter of law.

Dolfini v. Erie R. R. Co., 178 N. Y. 1–4, 70 N. E. 68, does not dispose of this case. Cullen, J., says that Dolfini's Case is not like the cases often occurring at railroad crossings, where, as the traveler approaches the railroad, at some points he obtains a clear view of the track and at other points his vision is obstructed by intervening obstacles, and he also points out that at the time and place of the accident there were travelers, some of them in vehicles on the other side of the road, waiting until they could cross in safety, who saw the coming train and made no attempt to pass over the tracks. In Smith v. N. Y. C. & H. R. R. R. Co., 177 N. Y. 224, at page 230, 69 N. E. 427, at page 429, Werner, J., cites the language of the court in Kellogg's Case, 79 N. Y. 72, as follows:

"In the Kellogg Case, supra, this court said: 'There is considerable evidence in this case of measurements and experiments to show how a train

approaching this crossing from the south could be seen from various points on this highway. Such evidence is frequently very reliable and satisfactory, but it is not necessarily conclusive. Such experiments are made when witnesses are calm and their whole minds free from any distractions, much intent upon the matter in hand. There may be a slight change in the intervening obstacles, and the speed of the approaching train is not there.'"

Dolfini's Case and this case may therefore be discriminated. In Dolfini's Case there was undisputed evidence of such a clear vision from the viewpoint of the plaintiff (strengthened by the testimony of witnesses at the place and time of the accident, similarly situated as was the plaintiff, who actually saw the approaching train), so that the plaintiff, looking, must have seen the approaching train 200 or 300 feet away in plain sight. In the case at bar, if the train was distant more than 300 feet, it could have reached the crossing in less than 4 seconds, and hence it might have been out of his vision and yet reached the point of collision in the space of time which the plaintiff took to start up his team to pass over the 5 feet, then the first tracks, and then the 7.5 feet of space between the tracks. The plaintiff does not testify as to his rate of travel, save that he says it was necessarily slow. If the rate was 4 miles an hour, he traveled 5.8 feet in a second; if 3 miles an hour, 4.4 feet a second. And, further, there is a manifest difference between the testimony of those who were similarly situated at the time of the accident, with their attention directed to the same matter, and the testimony of those who stood on foot at the viewpoint for the purpose of making a test on different days and under entirely different circumstances, and not engaged in driving a team of horses. The plaintiff was entitled to all favorable inference in his favor (McDonald v. Metropolitan St. Ry. Co., 167 N. Y. 66, 60 N. E. 282; Smith v. N. Y. Central & H. R. R. R. Co., supra); and, of course, the court could not decide the case as a matter of law merely upon his view of the preponderance, or the very great preponderance, of the evidence.

So far as there was a question of contributory negligence as a matter of law before the court, it was this: Is a man driving a team and a heavy van along a village street, who, when approaching a crossing thereat over double railroad tracks at right angles that is unguarded and otherwise unprotected, stops at a point 5 feet distant from the nearer rails and has therefrom a view to the east along the tracks of 300 feet only, because it is obstructed at that point by various stationary objects, although the track runs to the east in a straight line for more than 1,000 feet, chargeable with contributory negligence if, after looking both ways and seeing no train, and after listening and hearing no sound or signal of any approaching train, he proceeds on his way across the tracks? The rule is that, if intelligent and reasonable men could fairly differ over the question whether the plaintiff exercised due care under the circumstances, the jury must decide. Smith v. N. Y. C. & H. R. R. R. Co., supra, and authorities. The measure of care is well stated in Judson v. Central Vermont R. R. Co., supra, and in Lewis v. Long Island R. R. Co., 162 N. Y. 52; 56 N. E. 548. I think that the case presented a question primarily for the jury.

In Smith v. N. Y. C. & H. R. R. R. Co., at page 228, of 177 N. Y., page 429 of 69 N. E., Werner, J., says:

"The so-called crossing cases are proverbially troublesome, for there are comparatively few instances in which the facts and circumstances, considered in connection with the oral testimony, lead so unerringly to a single conclusion as to permit the courts to hold, as matter of law, that contributory negligence has been established. · The difficulty in such cases is not with the law, for that is too well settled for discussion, but with the application of the law to a given state of facts."

Our review of the facts in this case leads us to the conclusion that, in the interests of justice, it is best to order a new trial before a jury, rather than to reinstate the verdict.

Judgment reversed, and new trial granted, upon payment by the defendant within 20 days of the costs of the trial already had and disbursements to the date of the order. All concur.