## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* LYNN.

[No. 21,239. Filed November 6, 1908. Rehearing denied January 27, 1909.]

1. PLEADING.—*Complaint.—Videlicet.—Railroads.—Speed.*—A complaint alleging that defendant railroad company negligently ran its "locomotive and train of cars up to and over said crossing at a high rate of speed, to wit, twenty-five or thirty miles an hour, a rate of speed greatly in excess of the rate of speed provided in said ordinance," sufficiently shows a violation of the speed ordinance. p. 593.

2. SAME.—*Complaint.— Railroads.— Street Crossings.— Contributory Negligence.*—A complaint alleging that plaintiff, upon passing a watch-house, which obstructed the vision to the north until within eight feet of defendant railroad company's track, looked up the track 250 feet but saw no train, that he approached the track looking south for an approaching train, and just as he stepped upon the track a train running at the rate of thirty miles per hour struck him, inflicting injuries, does not show contributory negligence, the court being unable to say that the train was within 250 feet at the time of looking, and the presumption being, if one is necessary, that the watch-house obstructed the view beyond the 250 feet. pp. 593, 597.

3. SAME.—*Complaint.—Contributory Negligence.—Inferences.*—The burden of proving contributory negligence being upon the defendant in personal injury cases, inferences as to such negligence in a complaint must be drawn in favor of the plaintiff. p. 593.

4. RAILROADS.—*Street Crossings.—Look and Listen Rule.*—The failure to look and listen in crossing a railroad track does not absolutely preclude recovery, since circumstances may justify a temporary direction of the attention elsewhere, the question then being one for the jury. pp. 593, 594.

5. SAME.—*Obedience to Law.—Presumptions.—Due Care.*—Within reasonable limits a traveler may assume that a railroad company

will obey the law, but this does not relieve the traveler from exercising due care. p. 594.

6. TRIAL.— *Questions of Law and Fact.— Railroad Crossings.— Contributory . Negligence.*—Where the facts in reference to an injury at a highway crossing are undisputed, the question of contributory negligence is for the court if but one inference can reasonably be drawn, and for the jury, if diverse inferences can be drawn. p. 597.

7. . RAILROADS. — *Speed. — Street Crossings. — Contributory Negligence.*—Railroad companies may ordinarily run their trains at a very high rate of speed without the imputation of negligence, but this rule does not obtain while running through cities. p. 598.

8. SAME.— *Speed.— Street Crossings.— Speed Ordinances.— Due Care.—Question for Jury.*—Whether a traveler used ordinary care in looking for an approaching train, when attempting to cross railroad tracks on a street, in view of the presumption that the company would obey the speed ordinance, is ordinarily for the jury. p. 598.

9. PLEADING.—*Complaint.—Railroads.—Contributory Negligence.*— A complaint against a railroad company for personal injuries, ·to be bad because of showing contributory negligence, must specifically set out facts requiring such inference. p. 600.

10. TRIAL.— *Interrogatories.— Railroads.— Street Crossings.—Contributory Negligence.*—Interrogatories and answers thereto showing that plaintiff was injured upon a street crossing, which fail to show the speed of the train—alleged to be thirty miles an hour—cannot overcome a general verdict for plaintiff, there being nothing to show that the plaintiff heard, or could have heard the ringing of the bell of the approaching train in time to escape. p. 601.

11. SAME.— *Instructions.— Conflicting.— Railroads.—Street Crossings.—Due Care.*—In an action for personal injuries received on a street at a railroad crossing, an instruction stating that if plaintiff had just previously assisted in moving a watch-house to the north of the street along the railroad track, its location could not excuse a failure to see the trains approaching from the north, and an instruction that the plaintiff was not bound to use the highest degree of care, and accordingly the jury might consider whether a watch-house prevented him from seeing until he was close to the track, are conflicting and misleading, and therefore constitute reversible error. p. 602.

12. RAILROADS.— *Watch-Houses.— Obstructions to View.— Street Crossings.*—Travelers are not excused from looking up and down a railroad track for approaching trains at a street crossing because of a watch-house located along the track, but they must look, when not excused, when nearer the track. p. 603.

13. APPEAL. — *Rehearing.* — *Questions Presentable.* — Points not raised in the original briefs cannot be raised on rehearing. p. 605.

From Superior Court of Vigo County; *S. C. Stimson,* Judge.

Action by Robert R. Lynn against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $7,000, defendant appeals. Appealed from Appellate Court under §1394 Burns 1908, cl. 3, Acts 1901, p. 565, §10. *Reversed.*

*L. J. Hackney* and *Lamb, Beasley & Sawyer,* for appellant.

*Miller, Shirley & Miller* and *John Q. Piety,* for appellee.

GILLETT, C. J.—Appellee, who was the plaintiff below, sued appellant, charging it with negligence in the operation of one of its trains, whereby appellee was injured in attempting to cross appellant's track, at a point where it intersected a street in the city of Terre Haute. The second and third paragraphs of complaint, on which the cause was tried, seek to predicate negligence in running said train over said crossing without ringing the bell or whistling, and in violation of an ordinance limiting the speed of locomotives and cars to five miles per hour. The objection urged against these paragraphs is that they affirmatively show that appellee was guilty of negligence contributing to his injury. It appears from said paragraphs that appellee, who was an employe of another railroad company, had been engaged, on the day in question, in moving a watch-house from the south side of said street to the north side thereof. The watch-house was about nine feet long and six feet wide, and was set lengthwise with the street; and about eight or nine feet west of appellant's tracks. It appears that appellant's line of railroad extended through said city from the north in a southwesterly direction, and that at said street the company had two tracks, which were straight for a considerable distance to the north. Another railroad company had seventeen

tracks, including main tracks and switches, at said street, immediately east of appellant's tracks, and south of said street all of said tracks curved to the south and east. One of said paragraphs charges, or attempts to charge, an obstruction of the view of appellant's tracks to the south, within two hundred fifty feet of said street, by reason of cars, making it very dangerous to cross said tracks from the west without looking south. It is charged that appellant's said tracks crossed the street at such an angle that the watch-house obstructed the view of said tracks to the north, from the north side of said street "about twenty feet west of the west tracks of the defendant, continuously up to said west track until a point about eight or nine feet west of said track was reached." It is also alleged that after locating said watch-house appellee started to cross appellant's tracks, from a point on the north side of said street about twenty feet from appellant's west track; and that when he came to the southeast corner of said watch-house he stopped and looked to the northeast up appellant's tracks for 250 feet for approaching trains, and also listened, but did not see or hear a train on said west track; that he saw and heard a train on appellant's east track going north, to the north of said street, "whereupon plaintiff, looking to the south and east to see if any trains were approaching the crossing from that direction, took two or three steps towards defendant's tracks, and just as he stepped one foot over the west rail of the defendant's west track, the defendant" negligently ran its "locomotive and train of cars up to and over said crossing at a high rate of speed, to wit, twenty-five or thirty miles per hour, a rate of speed greatly in excess of the rate of speed provided in said ordinance," without ringing the bell or sounding the whistle, and struck the plaintiff, etc. Further facts are pleaded to show that, if signals had been given, appellee would have been warned, and that, if appellant had observed the speed ordinance, appellee would have been able to cross said track without injury.

Assuming that the train came from the north, we do not think that it can be said, as a matter of law, that either paragraph of the complaint shows that there was contributory negligence. The rate of speed is not definitely alleged, but is laid under a *videlicet,* the substance of the allegation being that the train was negligently run at a speed in excess of the limit provided for in the ordinance. *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490, 496. But assuming that the train approached said crossing at the rate of thirty miles per hour, it would traverse the distance of 250 feet in less than six seconds, and, in view of the time required to look and listen for trains from the south, and to walk from the watch-house to the track, we do not think that we can say that the train was within the space of 250 feet when appellee looked in that direction, nor that he loitered in his effort to cross. If necessary, we would have to assume that, at the point of looking, the watch-house constituted an obstruction to the view beyond that distance. We are also of opinion that it cannot be said as a matter of law that appellee was guilty of negligence in failing to look to the north after he had reached a point where he had an unobstructed view in that direction. As the latter point seems to be the important one in the case, at least upon the complaint, we shall consider it more at length, and in doing so we may say preliminarily that, since the burden was on appellant in respect to contributory negligence, by virtue of the statute, the inferences upon that subject which the complaint admits of must be in favor of appellee.

In 3 Elliott, Railroads (2d ed.), §1179a, it is said: "Even in Indiana, where the rule as to looking and listening is well established, it is held that particular circumstances requiring the traveler to direct his attention temporarily elsewhere, or misleading him, may make the case one for the jury, and that the rule is not inflexible

and unvarying as to time and place, so as always, and under all circumstances, to require the case to be taken from the jury merely because the traveler might have seen the train if he had looked in the right direction at a particular instant from a particular place." It should also be suggested that the cases in this State recognize the doctrine that it is the right of the traveler, within reasonable limits, to assume that the railway company will obey the law; and while this does not relieve him from the exercise of due care, yet it may be a feature in determining whether due care was exercised. *Pittsburgh, etc., R. Co.* v. *Yundt* (1881), 78 Ind. 373, 41 Am. Rep. 580; *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435; *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476; *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind. 522, 51 Am. Rep. 761; *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524. As was said in *Woehrle* v. *Minnesota Transfer R. Co.* (1901), 82 Minn. 165, 84 N. W. 791, 52 L. R. A. 348: "The rule that it is the duty of a traveler on the highway, about to go upon a railway crossing, to look and listen, to the extent of his opportunity, for an approaching train, is not always an absolute one. While he cannot omit to exercise proper diligence in so looking and listening, in reliance upon the railway company's doing its duty as to giving signals, yet there are circumstances where, in regulating his own conduct, he may have some regard to the presumption that the company will do its duty."

. In *St. Louis, etc., R. Co.* v. *Dillard* (1906), 78 Ark. 520, 94 S. W. 617, which involved a failure to give signals, the court said: "Now in this case we are asked to say, as a matter of law, that, though the plaintiff brought his team almost to a standstill in twenty-five or thirty feet of the track, and carefully looked and listened both ways up and down the track, and no train was in sight for a distance of

200 yards to the west, and he started across, meanwhile lis- tening for trains and looking toward the east where he spe- cially apprehended danger, he was guilty of negligence in failing to look again toward the west while going that dis- tance toward the track. So to hold would be, we think, to make the traveler the insurer of his own safety and deprive him entirely of the right of recovery for injury caused by the negligence of the railroad company unless he kept his eyes turned every moment, under all circumstances, toward the direction from which the train came."

In *Rodrian* v. *New York, etc., R. Co.* (1891), 125 N. Y. 526, 26 N. E. 741, the New York court of appeals said: "If in case of an accident at a crossing it appears that the per- son injured did look for an approaching train, it would not necessarily follow as a rule of law that he was remediless be- cause he did not look at the precise place and time, when and where looking would have been of the most advantage. Many circumstances might be shown which could properly be considered by the jury in determining whether he exer- cised due and reasonable care in making his observation. The presence of other and imminent dangers, the raising of gates erected by the company to guard the highway, giving assurance that the crossing was safe; these, and similar cir- cumstances appearing, may be considered in determining whether the person injured, who did in fact look and listen before attempting to cross the track, fairly discharged the duty imposed upon him, although it should appear that if he had looked at another instant of time, or had looked last in the direction from which the train was approaching, he would have seen it." See, also, *Continental Improvement Co.* v. *Stead* (1877), 95 U. S. 161, 24 L. Ed. 403; *Grand Trunk R. Co.* v. *Ives* (1892), 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *McGhee* v. *White* (1895), 66 Fed. 502, 13 C. C. A. 608; *French* v. *Taunton Branch Railroad* (1875), 116 Mass. 537; *Fulmer* v. *Illinois Cent. R. Co.* (1890), 68 Miss. 355, 8 South. 517; *Jetter* v. *New York, etc., R. Co.* (1865), 2

Keyes (N. Y.) 154; *Bowen* v. *New York, etc., R. Co.* (1895), 89 Hun 594, 35 N. Y. Supp. 540; *Dougherty* v. *Chicago, etc., R. Co.* (1905), 20 S. Dak. 46, 104 N. W. 672; *Detroit, etc., R. Co.* v. *Van Steinburg* (1868), 17 Mich. 99; *Langhoff* v. *Milwaukee, etc., R. Co.* (1865), 19 Wis. 515; *Ferguson* v. *Wisconsin Cent. R. Co.* (1885), 63 Wis. 145, 23 N. W. 123; *Thomas* v. *Delaware, etc., R. Co.* (1881), 8 Fed. 729; *Farrell* v. *Erie R. Co.* (1905), 138 Fed. 28, 70 C. C. A. 396; *Nixon* v. *Chicago, etc., R. Co.* (1892), 84 Iowa 331, 51 N. W. 157; *Ward* v. *Marshalltown, etc., R. Co.* (1906), 132 Iowa 578, 108 N. W. 323; *Nelson* v. *Long Island R. Co.* (1905), 96 N. Y. Supp. 246; *Pennsylvania R. Co.* v. *Ogier* (1860), 35 Pa. St. 60, 78 Am. Dec. 322; note to *Scott* v. *St. Louis, etc., R. Co.* (1906), 9 Am. and Eng. Ann. Cas. 212; 7 Thompson, Negligence (White's Supp.), §1669.

This case, as presented by the complaint, authorizes the drawing of inferences relative to the want of contributory negligence which brings it within the principle which may be deduced from the cases of *Chicago, etc., R. Co.* v. *Boggs, supra; Cleveland, etc., R. Co.* v. *Harrington, supra; Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind. 380; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357; *Miller* v. *Terre Haute, etc., R. Co.* (1895), 144 Ind. 323; *Greenawalt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219; *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576.

In *Cleveland, etc., R. Co.* v. *Harrington, supra*, the effect of a speed ordinance was involved. The more important facts were as follows: The plaintiff, a woman, had looked twice to the north, the direction from which the train came, the last time at a point where she was thirty-seven feet from the crossing, and where she could see 400 feet up the track. Afterwards, as she walked toward said track, her attention was given to the possible approach of trains from the other direction. There was an obstruction to the view to the south until a point was reached about eight feet from an intervening track. It was impossible to hear or distinguish

the sound of the approaching train, by reason of a freight train which had just gone north on another track. The train from the north, which ran over her, was running at a speed of eighteen or twenty miles an hour, and was not ringing the bell. The court said: "Where one approaching a railroad crossing of the kind above indicated is injured, and the facts and circumstances are not controverted, and the inferences from such facts. and circumstances are unequivocal, and can lead to but one conclusion, the court will declare, as matter of law, whether the party injured was, or was not, guilty of contributory negligence; but in practice it often occurs that the facts and circumstances surrounding a particular case are such as to warrant different inferences, so that one impartial, sensible man may draw the inference and conclusion that the injured party was guilty of negligence, while another man equally impartial and sensible might draw a different conclusion; and in such cases the courts will not adjudge the question of negligence, but will leave it to the jury, under proper instructions. *Baltimore, etc., R. Co.* v. *Walborn* [1891], 127 Ind. 142; *Mann* v. *Belt R., etc., Co.* [1891], 128 Ind. 138. The question with which we are confronted is as to which of these classes the case under consideration belongs. It cannot be said that the appellee exercised no care to avoid the collision described in the complaint. It is evident from the facts and circumstances above set forth that very few seconds intervened between the time she looked north for approaching trains and the time at which she was struck. Of course it was her duty to look south as well as north, and while doing so, and attempting to cross the tracks, she was struck by an engine approaching from the north, which was not in sight a few seconds before. Had the engine which collided with her been run at the speed fixed by the city ordinance above mentioned, it is quite probable that she would have crossed the appellant's tracks in safety. While the general rule is

that trains may be run at a very high rate of speed without the imputation of negligence, it must be apparent to every one, upon a moment's reflection, that populous cities constitute an exception to the rule, by reason of the great danger to life and limb. *Philadelphia, etc., R. Co.* v. *Long* [1874], 75 Pa. St. 257; Wharton, Negligence (2d ed.), §803; *Loucks* v. *Chicago, etc., R. Co.* [1884], 31 Minn. 526, 18 N. W. 651. In the absence of some evidence to the contrary, we think the appellee had the right to presume that the appellant would obey the city ordinance, and would not run its trains at a greater rate of speed than four miles an hour at the point where the injury occurred, and while the wrongful conduct of the appellant in this regard would not excuse her from the exercise of reasonable care, yet in determining whether she did use such care her conduct is to be judged in the light of such presumption. If when she looked to the north 400 feet and saw no train, she knew that she could cross the tracks in safety before a train running at the speed fixed by the city ordinance could reach her from that direction, it would be a harsh rule which would adjudge her guilty of negligence because she was struck by a train moving nearly five times as fast as the speed fixed by the ordinances of the city, which she had a right to presume the appellant would obey. * * *. In our opinion the decided weight of authority is that, under the facts and circumstances in this case, the question of contributory negligence was a question for the jury under proper instructions from the court."

In *Miller* v. *Terre Haute, etc., R. Co., supra,* the subject was considered, and it was there in effect held that, while the traveler may indulge the presumption that the railway company will obey the law, yet that fact will not excuse reasonable care on his part in respect to the matter of looking and listening. The court there said: "We do not understand the cases of *Pittsburgh, etc., R. Co.* v. *Martin* [1882], 82 Ind. 476, and *Cleveland, etc., R. Co.* v. *Harring-*

*ton* [1892], 131 Ind. 426, to hold that one using a highway
at the crossing of a railway may do so without any care
for his own safety or the safety of those using the railway,
or that he may repose a blind confidence in receiving the
warning signals required to be given by locomotive en-
gineers, and pursue his course without looking or listening
for the approach of trains. We have no reason to doubt
the soundness of the rule in the Harrington case, nor that
of the Martin case, so far as it announced the right of the
traveler to believe that the railroad company would obey
the law.". The latter proposition being true, the existence
of the right may so far lower the definite standard of care,
which the law in ordinary cases lays down, as to carry to
the jury many cases wherein there has been no extreme dili-
gence in the matter of looking and listening, on the theory
that, in view of the right of the traveler to indulge the sug-
gested presumption, it becomes a question of fact whether he
took all of the care for his own safety that the average per-
son of ordinary prudence would in like circumstances be
reasonably prompted to take to safeguard himself. As was
well said by Hackney, J., in *Pittsburgh, etc., R. Co.* v. *Bur-
ton* (1894), 139 Ind. 357: " 'The care to be exercised by
him should have been commensurate with the danger to be
encountered.' The measure of care is not that the traveler
shall secure absolute freedom from the dangers which flow
from the negligence of railway operatives. If such were
the requirement, an utter abandonment of care could pre-
vail on the one side with a high degree of care on the other,
and with no remedy for injuries."

A case like *Cleveland, etc., R. Co.* v. *Harrington, supra,*
is to be broadly distinguished from one in which the traveler
while watching the continued approach of a train, unneces-
sarily undertakes to cross in advance of it, and is overtaken
in the effort; for in such case, as was pointed out in *Thomas*
v. *Delaware, etc., R. Co.* (1881), 8 Fed. 729, "there is an
irresistible inference of fact that there was not sufficient time

to cross, because the proximity of the train can be measured at every step taken by the pedestrian.''

Since the enactment of the contributory negligence act of 1899 (Acts 1899, p. 58, §362 Burns 1908), it is evident that a complaint under the existing practice will be quite as sufficient, so far as the matter of contributory negligence is concerned, as it would have been under the old practice were noncontributory negligence expressly averred. It was then required that the specific averments should clearly show the contributory fault of the plaintiff to make such allegations overcome the general negative upon that subject. *Ohio, etc., R. Co.* v. *Walker* (1888), 113 Ind. 196, 3 Am. St. 638; *Louisville, etc., R. Co.* v. *Summers* (1892), 131 Ind. 241; *Toledo, etc., R. Co.* v. *Adams* (1892), 131 Ind. 38. As was said by Woods, J., in *Pittsburgh, etc., R. Co.* v. *Wright* (1881), 80 Ind. 182, which was a railroad crossing case: ''So long as the facts stated do not force the legal conclusion that there was contributory fault, the averment that there was no such fault entitles the plaintiff to have it submitted to the jury as a question of fact, whether there was such negligence.'' Relative to the existing practice, it was declared in *Southern Ind. R. Co.* v. *Peyton* (1902), 157 Ind. 690, that ''no adverse inference will arise upon a pleading from the absence of unnecessary averments,'' and that contributory negligence ''should be established by evidence, not by presumptions.'' The situation, therefore, of this case is, so far as the complaint is concerned, that it is aided, not alone by the suggested possibility that the plaintiff was misled, but also by all further facts, which could have been legitimately proved, in view of the narrative of the accident which the pleading contains, as matter going to acquit the plaintiff of contributory negligence. Arising as this question does, we hold that the paragraphs upon which the judgment rests are not open to appellant's objections.

The next question for our determination is whether the

Cleveland, etc., R. Co. v. Lynn—171 Ind. 589.

court erred in overruling appellant's motion for judgment on the jury's answers to interrogatories. The an-

10. swers do not advise us at what rate of speed the train approached the crossing, and, in view of the complaint, we may at least infer that the rate was thirty miles an hour, and as against the verdict it cannot be assumed that conditions at the crossing were such that appellee heard, or could have heard, the ringing of the bell, or what one of the interrogatories characterizes as the sounding of the first danger signal. As to the latter warning, there may not have been time to escape, or at least want of opportunity for rational thought, after it was given. In view of these considerations, the case upon the answers to interrogatories presents itself in much the same manner as it does upon the complaint, and the same general considerations which we have suggested as making possible the conclusion that there was noncontributory negligence, notwithstanding the specific facts averred in the complaint, lead us to hold that the answers to interrogatories are not sufficient to overcome the general verdict. See *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662. Beyond this, since a new trial must be ordered, we do not feel called on to go in the solution of the question, as it may present itself upon the second trial.

Having disposed of the foregoing matters we turn to what seems to be the next consideration. The record and the briefs of counsel fairly present the question whether the court erred in giving the tenth instruction tendered by appellee. *Hart* v. *Scott* (1907), 168 Ind. 530. The instructions as set out show that after the giving of an instruction on the subject of the requirement that the plaintiff look and listen, the court gave the tenth instruction, which is as follows: "The traveler must, as has been stated, take all reasonable precautions to hear and see approaching trains, but he is not absolutely bound to hear or see them, or required to take the highest possible degree of care. Accordingly, in this case, in determining whether the plaintiff, at the time

and immediately before he was struck, was in exercise of reasonable care, you may consider the facts, if the evidence shows such facts, that there was a watch-house on the north side of Third avenue, and near defendant's track, and that, by reason of said watch-house, plaintiff was unable to get any view of defendant's track or the approaching train thereon from the northeast, until he was close to said main track.''

The point is made that the giving of said instruction was error, upon the ground that where the court gives two or more instructions which are inconsistent and calculated to mislead the jury, or leave them in doubt as to the law, the judgment should be reversed. We gather from the argument in appellant's brief that the instruction with which said instruction is supposed to be inconsistent is instruction nineteen, given at the request of appellant. That instruction reads as follows: "If you should find from the evidence in this case that the plaintiff, and others working with him, were in the employ of the Chicago & Eastern Illinois Railroad Company, and as such employes had, just prior to the accident that occasioned plaintiff's injuries, moved a watchman's shanty from the south side to the north side of Third avenue, and that said shanty, when moved to the north side of said avenue, became and was an obstruction, and prevented persons passing south of said shanty along said avenue from seeing defendant's tracks to the north, then I instruct you that the defendant, at the time of the accident of which plaintiff complains, owed the plaintiff no new and increased duty because of the fact that said shanty was then standing upon the north side of said avenue, and the plaintiff cannot be excused from failing to see and observe the approach of defendant's train that struck him, because of the existence and presence of said shanty at a place where he and his coworkers had placed it (immediately before plaintiff was

injured) as the employes of and for a railroad company other than the defendant.''

We are not called on to determine whether instruction nineteen should have been given as requested. It is clear that instruction ten is so far inconsistent with it that the inevitable result must have been to leave the minds of the jurors in a state of confusion respecting the relation of the obstruction to the question as to whether appellee was in the exercise of due care. Instruction nineteen informed the jury that the location of the watch-house could not excuse the plaintiff from failing to observe the approach of the train, while instruction ten informed them that the plaintiff was not absolutely bound to hear and see approaching trains, or to take the highest possible degree of care, and that ''accordingly'' the jury might, in determining whether plaintiff was in the exercise of reasonable care, consider, if the evidence showed the fact, that there was a watch-house which prevented him from seeing until he was close to the track. In view of the confusion which the giving of said instructions was calculated to engender in the minds of the jury, it must be held that the giving of the instruction complained of was error. *Wenning* v. *Teeple* (1896), 144 Ind. 189; *Pittsburgh, etc., R. Co.* v. *Noftsger* (1897), 148 Ind. 101. As an additional reason for a reversal we may add that, in our judgment, instruction ten was in itself strongly calculated to mislead the jury as to the law, since it informed them that they might regard the location of the watch-house—a lawful structure— as a fact having something to do with the care which the plaintiff was called on to exercise. The instruction involves the idea that the watch-house might be regarded as

12. an excuse for a failure to see the approaching train. Now that might have been true, so far as the sense of vision was concerned, from the point where appellee looked, but he was on foot, and without any pressing emer-

gency demanding haste, so that he could as well as not, have looked from a point nearer the track. The watch-house, therefore, morally speaking, had nothing to do with his failure to see the train, if ordinary care required him to look again, and therefore the question simply was whether, having looked and listened to the extent that he did, he was, in view of the other circumstances, justified, without further effort to look to the north, in attempting to cross the track. This case is quite different from *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576, which appellee's counsel cite as upholding the tenth instruction. The two instructions are by no means alike, but in the case just referred to the plaintiff was driving, and a cut in the highway, extending up to the right of way, prevented a view of the track until the end of the cut was reached, while beyond that point the view was otherwise partially obstructed. We may further say that it appears not unlikely, in view of the jury's answers to interrogatories concerning the giving of signals, that the finding would have been for appellant on the issue of contributory negligence had the jury not concluded that the presence of the watch-house tended to acquit appellee of negligence. For this reason the presumption is strong that any inaccuracy or confusion in the charge upon that subject was productive of the result complained of. Other questions are raised, but it is not necessary to decide them.

Judgment reversed, and a new trial ordered.


## On Petition for Rehearing.

Per Curiam.—Appellee has filed his petition, supported by an able brief, for a rehearing in this cause, on the ground that this court erred in holding that there is a conflict between instruction ten, given at the request of appellee, and instruction nineteen, given at the request of appellant; in holding, or intimating, that instruction ten is not

Cleveland, etc., R. Co. *v.* Lynn—171 Ind. 589.

a correct statement of the law applicable to the facts and the evidence; in holding, or implying, that it is not necessary for the court to pass upon the correctness of instruction nineteen; in holding, or implying, that appellant, by requesting instruction nineteen, claimed by appellee to be erroneous and in conflict with instruction ten, was entitled to a reversal though inviting the error; and in reversing the judgment by reason of alleged conflict between instruction ten, asked by appellee and given, and claimed to be correct, and instruction nineteen, given at the request .of appellant, and now claimed to be incorrect.

In the original briefs of the parties, appellant did not make the point, or cite any authority, or discuss the question, as to whether instruction ten was erroneous or not, 13. but made the point and presented the question only of the two instructions being inconsistent and calculated to mislead the jury. Appellee contented himself with the insistence that instruction ten was good, and that it was not in conflict with instruction nineteen, and did not even suggest that nineteen was not a good instruction; on the contrary, tacitly conceded that it was.

While the court might not refuse to entertain a petition for a rehearing predicated upon points not raised in the original points or briefs, if to do so would work manifest injustice, we do not think this is such a case.

It was upon the presentation made by the parties that the original opinion was based, and was the reason for the language employed in the opinion, when the court said: "We are not called upon to determine whether instruction nineteen should have been given," etc., for, as presented, the conflict between the two instructions is manifest, and, taken together, could lead to but one result.

The petition for rehearing is overruled.