BAKER, ADMINISTRATOR v. BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY.

[No. 8,970.    Filed March 31, 1916.]

1. APPEAL.—*Review.*—*Judgment on Answers to Interrogatories.*— In determining the correctness of the trial court's ruling sustaining a motion for judgment on the jury's answers to interrogatories notwithstanding the general verdict for plaintiff, the court on appeal will not look to 'the evidence actually given in the case, but will search the pleadings to see if by any evidence possible under the issues such answers can be reconciled with the general verdict, and every possible reasonable inference and presumption deducible from evidence which might have been admitted in support of such verdict will be indulged in its favor.    p. 456.

2. APPEAL.—*Review.*—*Harmless Error.*—*Interrogatories to Jury.*— *Concealed Assumption of Fact.*—In an action against a railroad company for the death of plaintiff's decedent in a crossing accident, interrogatories to the jury asking how far plaintiff's decedent could have seen the train which struck her, when she was certain distances from the track, had she looked in the direction from which the train was coming, improperly contained a concealed assumption that the train which struck decedent was within her range of vision, but the error was harmless in view of the fact that the trial court ignored the assumption and gave to the answers a construction as favorable to the general verdict as any fair interpretation of such interrogatories permitted.    p. 459.

3. APPEAL.—*Review.*—*Answers to Interrogatories.*—*Presumption Favoring Verdict.*—On appeal from a judgment for defendant on the jury's answers to interrogatories notwithstanding a general verdict for plaintiff in an action for the death of plaintiff's decedent at a railroad crossing, the court must assume in favor of the general verdict that decedent looked for an approaching train. p. 460.

4. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—One who looks for an approaching train before attempting to cross the tracks can not be said to be guilty of negligence for not looking in the right direction at the precise place and time when and where looking would have been of the most advantage.    p. 460.

5. RAILROADS.—*Crossing Accidents.*—*Duty to Look for Trains.*— While it is the duty of a person on approaching a railroad crossing to look in both directions for an approaching train, where the general verdict warranted the assumption that at least during part of the time in which plaintiff's decedent was traveling from a point fifty feet south of the track to such track, she was looking toward the east for an approaching train, it can not be said as a matter of law that she was negligent for looking in such direction rather than

in the direction from which the belated train which struck her was approaching.   p. 461.

6. RAILROADS.— *Crossing Accidents.—Contributory Negligence.— Right to Assume Obedience to Law.*—A traveler about to pass over a railroad crossing has the right, within reasonable limits, to assume that the railroad company will signal the approach of its train to the crossing as required by statute, and that it will obey the provisions of an ordinance limiting the speed of trains.   p. 462.

7. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Judgment on Answers to Interrogatories.—Review.—Presumptions.—* In an action against a railroad company for the death of plaintiff's decedent at a crossing, where the railroad company's negligence may have been responsible for the perilous situation of decedent and a confused condition of her mind resulting therefrom, the court on appeal, in reviewing the action of the trial court in sustaining a motion for judgment for defendant on the jury's answers to interrogatories notwithstanding the general verdict for plaintiff, must presume in favor of the general verdict that such confused condition of mind did exist and that defendant's negligence was responsible therefor, in the absence of a finding of the jury to the contrary, and hence decedent should not be charged with contributory negligence for lack of prompt and intelligent action resulting from such condition of mind.   p. 463.

8. RAILROADS.—*Crossing Accidents.—Negligence.—Question of Law.* —In an action for the death of plaintiff's decedent at a railroad crossing, where it appeared, in view of assumption warranted, that if decedent had looked west three and a half seconds before her injury and when at a point fifty feet from the track, she would have seen no train approaching, and that if her attention had then immediately been directed toward the east for only two or three seconds while she continued her approach to the crossing she would in all probability have been on the track within such time, and the approaching train could have been so close that escape was impossible, or at least so near that no appreciable time would have remained to her in which to determine and take intelligent action in view of her present and imminent peril, the question of negligence in decedent could not be determined as a matter of law, so as to sustain a judgment on the jury's answers to interrogatories notwithstanding the general verdict for plaintiff.   p. 464.

From Martin Circuit Court; *James W. Ogdon,* Judge.

Action by Daniel A. Baker, administrator of the estate of Phoeba Baker, deceased, against the Baltimore and Ohio Southwestern Railroad Com-

pany. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Frank E. Gilkison*, for appellant.

*W. R. Gardiner, C. K. Tharp, C. G. Gardiner, Fabius Gwin* and *Edward Barton*, for appellee.

HOTTEL, J.—This is an appeal from a judgment against appellant in an action brought by him against appellee to recover damages on account of the death of Phoeba Baker, alleged to have been caused by appellant negligently striking her with one of its trains at Shoals, Indiana. Said Daniel A. Baker, the administrator, was the husband and only heir of the deceased Phoeba Baker. A trial by jury resulted in a verdict for appellant in the sum of $1,000. With its general verdict, the jury returned answers to interrogatories. Appellee's motion for judgment thereon was sustained. The ruling on this motion is assigned as error and relied on for reversal. In determining the correctness of such ruling, this court will not look to the evidence actually given in the case, but will search the pleadings to see if, by any evidence possible under the issues, such answers can be reconciled with the general verdict, and every possible reasonable inference and presumption deducible from evidence which might have been admitted in support of such verdict will be indulged in its favor. *Lutz* v. *Cleveland, etc., R. Co.* (1915), 59 Ind. App. 16, 23, 108 N. E. 886; *Meyers* v. *Winona, etc., R. Co.* (1915), 58 Ind. App. 516, 106 N. E. 377.

The averments of the complaint which have a controlling influence on the question presented by the answers to interrogatories are in substance, as follows: On October 25, 1913, appellee's railroad, main track and sidetrack, crossed one of the

frequently traveled public streets of the west part of the town of Shoals, Indiana, and appellee was then operating one of its trains on its main line over and across such street. Immediately west of the crossing, the railroad track curves sharply to the north, and on the north side of the railroad and for a long distance west thereof there was, and is, a high hill which obstructs the view of such road west of the crossing for a distance of more than 250 feet. On the occasion in question, there was a train on the sidetrack west of said crossing about twenty yards, making it impossible to see approaching trains westward from said point for more than 150 feet. An ordinance of the town in force and effect at the time limited the speed of trains passing through such town to six miles an hour. At the time in question, appellee carelessly and negligently ran its train No. 8 operated by a locomotive engine, from the west toward, over and across the public crossing at the rate of 60 miles an hour, and in so doing negligently omitted to sound the whistle on said locomotive and negligently failed to ring the bell thereon from a point 80 rods west of the crossing to such crossing. Such train, on this occasion and for several months prior thereto, was due at the crossing at 2:29 p. m., and this fact was known to the public and to appellant's decedent. On the occasion in question, decedent, for the purpose of crossing the track, approached the crossing from the south in a careful and cautious manner about three o'clock p. m. At the same time appellee's train was approaching the crossing from the west. Because of the curve in appellee's track, the high hill on the north side thereof and the freight train on the sidetrack, decedent was unable to see such approaching train, and because of appellee's neglect and failure

to ring the bell and sound the whistle on its loco-
motive, decedent was unable to hear and did not
hear such train, and decedent had no notice of
such approaching train until she was on the track
and it struck her, and while in the act of crossing
such track, decedent was by appellee's negligence
struck by the train and so seriously injured thereby
that she died from such injuries three days later.
Decedent would not have been injured but for
appellee's negligence.   Had the whistle been sound-
ed or the bell rung, decedent would have heard the
same and would have been warned of the approach-
ing train and would not have gone on the track,
and had the train been running within the speed
limit provided by the ordinance, decedent could
have escaped from the track and avoided her injury
and death.

The interrogatories and answers thereto are as
follows: "1.   As the plaintiff's decedent, Phoeba
Baker approached the railroad tracks of the
defendant at the time and place where she was
struck and killed how far could she have seen a
train approaching from the west when she was
fifty feet from such place, had she looked to the
west? A.   100 yards   *   *   *   2.   How far could
she have seen such approaching train when she
was twenty-five feet from such track, had she
looked in the direction from which the train was
coming?   A.   75 yards   *   *   *   3.   How far
could she have seen such approaching train when
she was ten feet from such track, had she looked
in the direction from which the train was coming?
A.   100 feet   *   *   *   4.   How far could she
have seen the train which struck her, when she
was at the south rail of the main track had she
looked to the west?   A.   150 feet   *   *   *   5.
At the time plaintiff's decedent was at the end of

the ties on the south side of the main track, could she not have seen the train which struck her had she looked to the west when it was as much as two hundred and fifty feet away from the place where she was struck? A. Yes. * * * 6. If you shall answer the fifth interrogatory in the negative, then state how far she could have seen such train had she looked? A. 250 ft."

It is asserted by appellant that interrogatories Nos. 4, 5 and 6 are deceptive and misleading, and for this reason were improper and should 2. not have been given. In support of this contention, appellant insists, in effect, that each of the last three interrogatories contains a concealed assumption that the train which struck and injured decedent was within the range of vision expected to be elicited by the answer of the jury to the particular interrogatory at the particular time decedent was at the point indicated in such interrogatory as the point concerning which the inquiry therein was made. Such interrogatories are, we think, subject to the infirmity suggested by appellant, but the infirmity is one which the trial court did, and this court can, obviate or cure by ignoring the partially concealed assumption contained in such interrogatories, and giving to the answers thereto a construction as favorable to the general verdict as any fair interpretation to which such interrogatories are susceptible will permit. When we give to said interrogatories such interpretation, the jury, by its answers thereto, found that if decedent, when approaching the appellee's track had looked to the west when fifty feet distant she could have seen the train 100 yards away, if such train, at that particular time, had in fact been within that distance; that when twenty-five feet from the track she, by then looking west,

could have seen such train seventy-five yards distant, if it in fact, at that particular time, had been within that distance; that when ten feet from the track she, by then looking west, could have seen the train 100 feet distant, if at such time such train had, in fact, been within that distance; that when on the south rail of the main track, if she had then looked west, she could have seen such approaching train 150 feet distant, if in fact such train had at such time been within that distance; that when at the end of the ties on the south side of the main track, she, by then looking west, could have seen such train 250 feet distant, if such train at such time, had in fact been within such distance. There is no finding that the train which struck appellant's decedent was, at either of the times to which the respective inquiries were directed, within the distance indicated by the answer to each particular interrogatory, nor is there any finding that decedent was at such particular time looking west, or in the direction of such approaching train, or that she saw such train at either of such points, and there is no finding that she did not look both ways and listen for approaching trains. In view of the

3. issues, the law, applicable to the question under consideration, requires us to assume in favor of the general verdict, that decedent looked for an approaching train and, in view of

4. such assumption, it can not be said, as a matter of law, that decedent was guilty of negligence, because she did not look in the right direction "at the precise place and time when and where looking would have been of the most advantage." *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017. It

was decedent's duty under the law to look in both directions and we may assume in favor of the general verdict that, at least during a part of the time in which she was traveling from the point fifty feet south of the track to such track, she was looking toward the east to discover if any train was approaching from that direction, and it can not be said as a matter of law that she was negligent for looking in such direction rather than in the direction from which the belated train which struck her was approaching. Upon this question, the Supreme Court in *Cleveland, etc., R. Co.* v. *Lynn, supra,* 594, 595, quotes with approval the following language from *St. Louis, etc., R. Co.* v. *Dillard* (1906), 78 Ark. 520, 94 S. E. 617: "Now in this case we are asked to say, as a matter of law, that, though the plaintiff brought his team almost to a standstill in twenty-five or thirty feet of the track, and carefully looked and listened both ways up and down the track, and no train was in sight for a distance of 200 yards to the west, and he started across, meanwhile listening for trains and looking toward the east where he specially apprehended danger, he was guilty of negligence in failing to look again toward the west while going that distance toward the track. So to hold would be, we think, to make the traveler the insurer of his own safety and deprive him entirely of the right of recovery for injury caused by the negligence of the railroad company unless he kept his eyes turned every moment, under all circumstances, toward the direction from which the train came." Since the passage of the act of 1899 (Acts 1899 p. 58, §362 Burns 1914), the burden of proving contributory negligence is on the defendant and while appellee was entitled to make such proof under its general.

denial the plaintiff was also entitled to introduce any evidence that might tend to relieve her from the charge of such negligence, and hence may have introduced evidence which showed that, at the particular times and places indicated in the interrogatories, her attention was temporarily attracted elsewhere, thereby making such question one of fact for the jury, and the rule as to looking "is not inflexible and unvarying as to time and place, so as always, and under all circumstances, to require the case to be taken from the jury merely because the traveler might have seen the train if he had looked in the right direction at a particular instant from a particular place." *Cleveland, etc., R. Co.* v. *Lynn, supra,* 593, 594.

For the purposes of the question under consideration, we must assume that appellee's train approached the crossing where decedent was struck at a speed of sixty miles an hour in violation of an ordinance limiting such speed to six miles an hour and in violation of the State law requiring it to sound the whistle and ring the bell, etc. The decided "cases in this State recognize the doctrine that it is the right of the traveler, within reasonable limits, to assume that the railway company will obey the law; and while this does not relieve him from the exercise of due care, yet it may be a feature in determining whether due care was exercised." *Cleveland, etc., R. Co.* v. *Lynn, supra,* 594. See, also, *Cleveland, etc., R. Co.* v. *Rumsey* (1913), 52 Ind. App. 371, 376, 100 N. E. 782; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, 431, 30 N. E. 37. In *Cleveland, etc., R. Co.* v. *Lynn, supra,* the Supreme Court further said on this subject: "In the absence of some evidence to the contrary, we think the

appellee had the right to presume that the appellant would obey the city ordinance, and would not run its trains at a greater rate of speed than four miles an hour at the point where the injury occurred, and while the wrongful conduct of the appellant in this regard would not excuse her from the exercise of reasonable care, yet in determining whether she did use such care her conduct is to be judged in the light of such presumption. If when she looked to the north 400 feet and saw no train, she knew that she could cross the tracks in safety before a train running at the speed fixed by the city ordinance could reach her from that direction, it would be a harsh rule which would adjudge her guilty of negligence because she was struck by a train moving nearly five times as fast as the speed fixed by the ordinances of the city, which she had a right to presume the appellant would obey."

There is another fact of importance and controlling influence that should never be overlooked in a case of this character. It is a matter of common knowledge that when a person is suddenly and unexpectedly confronted with certain and imminent peril, like that with which appellant's decedent was confronted, at the time in question, the avoidance of which necessitated immediate action, on her part, there may, and ordinarily does, result a mental confusion and hesitation that prevents that prompt and intelligent action which the emergency may demand in order that the peril may be avoided, and where, as in this case, the averments of the complaint show that the railroad company's negligence may have been responsible for such perilous situation, and said condition of mind resulting therefrom, this court, in the absence of a finding of the jury to the contrary, must presume in favor of the

general verdict that such condition of mind did exist and that appellee's negligence was responsible therefor, and hence that the party injured should not be charged with contributory negligence on account of a lack of prompt or intelligent action on her part resulting from such confused mental condition. "The circumstances in which persons are placed must necessarily be considered in determining the question of fact whether the required degree of care has been exercised, and it is obvious that persons placed in a position of peril where a course of conduct must be determined without any time in which to deliberate, can not be judged by the same rule applicable where there is ample time to determine what course to take to avoid danger." *Roberts* v. *Chicago, etc., R. Co.* (1914), 262 Ill. 228, 104 N. E. 708, 710. See, also, *Pittsburgh, etc., R. Co.* v. *Carlson* (1900), 24 Ind. App. 559, 564, 56 N. E. 251. Assuming that the train which struck decedent approached at the rate of sixty miles an hour, it would have covered the greatest distance indicated by the answers to interrogatories, 100 yards, in a little less than three and a half seconds, so that if decedent had looked west three and a half seconds before her injury and when at a point fifty feet from the track we may assume that she would have seen no approaching train. If her attention had then immediately been directed toward the east for only two or three seconds while she continued her approach toward the track she would in all probability have been on the track within such time and the approaching train could have then been so close that escape was impossible, or at least so near that no appreciable time would have remained to her in which to determine and take intelligent

Baker *v.* Baltimore, etc., R; Co.—61 Ind. App. 454.

action in view of her present and imminent peril. "It is only when the standard of duty is fixed and certain, or where the measure of duty is defined by law, or when the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law and not of fact." *New York, etc., R. Co.* v. *Hamlin* (1908), 170 Ind. 20, 39, 83 N. E. 343. See, also, *Town of Albion* v. *Hetrick* (1883), 90 Ind. 545, 547, 46 Am. Rep. 230; *Town of Newcastle* v. *Grubbs* (1908), 171 Ind. 482, 496, 86 N. E. 757. Negligence can be determined by the court as a matter of law only in those cases where but one inference can be drawn from facts proven. *Cleveland, etc., R. Co.* v. *Rumsey, supra,* 376.

In view of the evidence possible under the issues in this case, we can not say that the answers to interrogatories leave the question of decedent's negligence open to but one inference. On the contrary, such answers leave the question of contributory negligence open to different inferences, and hence can not override the general verdict returned by the jury. We think the ends of justice would be subserved by directing a new trial rather than by directing judgment on the verdict. The judgment below is therefore reversed with instructions to the trial court to grant a new trial and for such further proceedings as may be consistent with this opinion.

NOTE.—Reported in 112 N. E. 27. As to contributory negligence of person in stepping on track in front of approaching train, which is running in excess of speed prescribed by ordinance, see 3 L. R. A. (N. S.) 196. As to duty of traveler approaching railway crossing as to place and direction of observation, see 37 L. R. A. (N. S.) 135.