Mann v. The Belt Railroad and Stock Yard Company.

No. 14,077.

MANN v. THE BELT RAILROAD AND STOCK YARD COMPANY.

RAILROAD.—*Crossing.*—*Duty of Person Approaching.*—The presence of a railroad track upon which a train may at any time pass is notice of danger, and it is the duty of a person about to cross such road, on a public highway, to exercise caution in so doing, and to look both ways for approaching trains, if the surroundings are such as to admit of such a precaution.

SAME.—Mental absorption, or reverie, induced by grief or business, will not excuse the omission of the duty to look and listen.

SAME.—*Accident at Crossing.*—*Contributory Negligence Declared as Matter of Law.*—In an action against a railroad company for an injury at a railroad crossing, it appeared that the plaintiff, who was approaching in a vehicle, and was familiar with the crossing, when about two hundred and fifty feet from the crossing looked to the east, where he could see about one-fourth of a mile, and saw no approaching train. He did not look to the east again, but looked to the west, where the view of the track was somewhat obstructed. If he had looked to the east, when within one hundred feet of the railroad, he would have had an unobstructed view of nearly one-half mile. He drove to the crossing in a slow trot, and was struck by a train from the east and seriously injured. No signals were given by the approaching train.

*Held*, that the court might adjudge, as matter of law, that the plaintiff was guilty of contributory negligence.

From the Marion Superior Court.

*B. Harrison, W. H. H. Miller, J. B. Elam, F. Winter* and *J. P. Baker*, for appellant.

*A. C. Harris, A. L. Roache* and *E. H. Lamme*, for appellee.

COFFEY, J.—This action was begun on the 17th day of August, 1882, to recover damages sustained by the appellant in a collision with one of the appellee's trains at a highway crossing.

On a trial of the cause the appellant had judgment. An appeal to this court resulted in a reversal of the judgment, and the cause was remanded to the Marion Superior Court for further proceedings.

The cause was again tried, at special term, resulting in another judgment in favor of the appellant. Upon appeal to the general term the judgment was reversed, upon the ground that the evidence did not support the verdict. From the judgment of the general term, reversing the judgment at special term, this appeal is prosecuted.

The controlling facts in the case are, that, on the 25th day of June, 1882, in the afternoon of Sunday, the appellant, with a friend, was riding on a public highway south of the city of Indianapolis, known as the Churchman Turnpike Road, in an open vehicle drawn by one horse. The road was crossed by the double track of the appellee's road, which, at the point of crossing, runs in a northeasterly and south-westerly direction. The turnpike runs north and south, and is itself crossed at right angles by a street known as Cypress, at a point 316 feet north of the crossing of the turnpike and the appellee's railroad, at the place where the appellant received his injuries. The appellee's railroad crosses Cypress street at a distance of 345 feet east from the center of the turnpike. From the point in Cypress street crossed by the appellee's railroad said road runs southwest, and at a distance of 470 feet intersects the turnpike at the place where the appellant was injured. As the appellant was travelling south on the turnpike, a locomotive and two or three freight cars came down from the northeast, and, as appellant was attempting to cross the track in the vehicle with his friend, the locomotive struck the horse and overturned the vehicle, resulting in serious and permanent injuries to the appellant. At the point where the injury occurred there was a grade of about twenty feet to the mile to the west, the steam was shut off, and the fireman was outside on the locomotive oiling the machinery, which could only be done when the locomotive was in motion.

There is some conflict as to the rate of speed at which the train was running, but we must assume here that the speed was that contended for by the appellant, which is thirty

miles an hour. There was no one on the train except the conductor, engineer and fireman. The train as it approached the crossing made but little noise. To the west of the crossing there was a cut a few feet in depth, on the top of which was standing an open board fence, though trains passing through the cut could be seen, while so passing, by persons on the turnpike. Soon after crossing Cypress street, and at a point 250 or 275 feet from the place of the injury, the appellant looked to the east for approaching trains, and did not hear or see any, and thereafter neither he nor his friend looked in that direction, but both looked to the west, the view of which was somewhat obstructed as above stated. To the northeast from the point where they looked to the crossing there were no obstructions, the country being level, affording a free and unobstructed view of the track and along it for a distance northeast of about 1,500 feet east; while at a point about 100 feet from the crossing the track northeast could be seen for nearly one-half mile. The parties drove to the crossing in a slow trot, and did not stop until the collision occurred.

They were familiar with the crossing and had been familiar with it for many years. Those in charge of the train did not blow the whistle or ring the bell. The railroad was not used for travel by passengers, but only for switching and transferring freight trains and empty cars around the city of Indianapolis.

Northeast of the crossing where the injury occurred, the appellee's railroad crosses three other public highways, namely: Cypress street at a distance of 470 feet, Higgins' Branch 309 feet further, and Knox street 420 feet from Higgins' Branch.

To the southwest there were no crossings within three-fourths of a mile.

The appellant knew and was familiar with all the surroundings.

The contention of the appellant, as we understand the ar-

gument of counsel in their able brief, is, that under the facts above stated the question of contributory negligence is one for the jury, under proper instructions from the court. In other words, that it was for the court to say what *sort* of care was required by the appellant in approaching the crossing at which he was injured, but it was for the jury to determine whether he exercised the *quantity* of care required by the law.

It has often been decided by this court, as well as by all the other courts of last resort in the United States, that there is a class of cases in which the court will adjudge, as matter of law, that a party has or has not, under the given state of facts, been guilty of negligence; while in another class of cases the question of negligence will be left to the jury under proper instructions from the court.   Smith Law of Neg., pp. 9–12; *Wabash, etc., R. W. Co.* v. *Locke,* 112 Ind. 404; *Evans* v. *Adams Ex. Co.,* 122 Ind. 362; *Directors, etc.,* v. *Jackson,* 3 App. Cases H. L. 193; *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261; *Baltimore, etc., R. R. Co.* v. *Walborn,* 127 Ind. 142; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31; *Chicago, etc., R. W. Co.* v. *Hedges,* 118 Ind. 5; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1; *Schofield* v. *Chicago, etc., R. W. Co.,* 114 U. S. 615; *Bellefontaine R. W. Co.* v. *Hunter,* 33 Ind. 335; *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279.

It is claimed by the appellant that this case falls within the latter class, while on the other hand it is earnestly contended by the appellee that it belongs to the former.

Cases belonging to the first class exist where the facts are undisputed, and the inferences to be drawn from such facts are not equivocal, and lead to but one conclusion, while cases of the second class exist where there is a dispute as to the facts, or where the facts being admitted different inferences can reasonably be drawn from such facts.   If such a state of facts exists as that one sensible, impartial man would infer that proper care had not been used, and that negligence

existed, while another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence, it is said to be the highest effort of the law to obtain the judgment of twelve men of the average of the community, comprising men of learning, men of little education, men whose learning consists only of what they have themselves seen and heard, the merchant, mechanic, the farmer and the laborer, as to whether negligence does, or does not, exist in the given case. Such judgment is supposed to be more valuable in such cases than the judgment of a single judge. *Railroad Co.* v. *Stout,* 17 Wall. 657; *Ohio, etc., R. W. Co.* v. *Collarn, supra; Baltimore, etc., R. W. Co.* v. *Walborn, supra.*

In cases of this class it is clearly the duty of the court to determine the *kind* of care to be used, while it is the exclusive province of the jury to determine the *quantity.*

In order to correctly solve the question as to whether this case belongs to the class where the court will adjudge the question of negligence as a matter of law, or will refer it to the jury under proper instructions, it is necessary to know what duty, if any, the law imposes upon one approaching a railroad crossing; the *kind* of care required, and whether the law undertakes to measure the *quantity.*

" When one approaches a point upon the highway, where a railroad track is crossed upon the same level, it is his plain duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any description, he must exercise, in so doing, what the law regards as ordinary care under the circumstances. He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption. The requirements of the law, moreover, proceed beyond the featureless generality that one must do his duty in this respect, or must exercise ordinary care under the circumstances. The law defines precisely what the term ' ordinary care under the circumstances ' shall mean in these cases. In the progress of the law in this behalf, the

question of care at railway crossings, as affecting the traveller, is no longer, as a rule, a question for the jury. The quantum of care is exactly prescribed as matter of law. In attempting to cross, the traveller must listen for signals, notice signs put up as warnings, and look attentively up and down the track. * * * If a traveller, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence *per se.*" Beach Contributory Negligence, p. 191, section 63; *Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56.

Where a person thus approaching a railroad crossing could have seen the train by looking, before he attempts to cross, and a collision occurs, it will be presumed he did not look, and by the neglect of so plain a duty he is guilty of such negligence as precludes him from recovering. *Wilcox* v. *Rome, etc., R. R. Co.,* 39 N. Y. 358.

Mental absorption, or reverie, induced by grief or business, will not excuse the omission of the duty to look and listen. *Havens* v. *Erie R. W. Co.,* 41 N. Y. 296.

The presence of a railroad track upon which a train may at any time pass, is notice of danger, and it is the duty of a person about to cross such road, on a public highway, to exercise caution in so doing, and to look both ways for approaching trains, if the surroundings are such as to admit of such a precaution. *St. Louis, etc., R. W. Co.* v. *Mathias,* 50 Ind. 65; *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476; *Terre Haute, etc., R. R. Co.* v. *Clark,* 73 Ind. 168; *Pennsylvania, etc., R. R. Co.* v. *Righter,* 42 N. J. L. 180; *Gorton* v. *Erie R. W. Co.,* 45 N. Y. 660; *Schofield* v. *Chicago, etc., R. W. Co., supra; Cleveland, etc., R. R. Co.* v. *Crawford,* 24 Ohio St. 631; *Stubley* v. *London, etc., R. W. Co.,* L. R. 1 Ex. 13; *Conner* v. *Citizens, etc., R. W. Co.,* 105 Ind. 62; *Bellefontaine R. W. Co.* v. *Hunter, supra.*

It will be seen by an examination of the authorities above cited that the law clearly prescribes the *kind* of care to be exercised by one about to cross a railroad on a public highway, and that it undertakes to measure, to some extent, the *amount,* or *quantity,* of care to be exercised in such cases.

In this case the appellant, when two hundred and fifty, or two hundred and seventy-five feet from the railroad, looked along the same eastward, when he could see a distance of about one-fourth of a mile, and saw no approaching train. He did not look again, but drove upon the track where the collision occurred. Had he looked when within one hundred feet of the railroad he would have had an unobstructed view of nearly one-half mile. He was familiar with the crossing, and it must be presumed he knew this fact. When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it is to be understood that he must exercise such care as a reasonably prudent person, in the presence of such a danger, would exercise to avoid injury.

The courts can not close their eyes to matters of general notoriety, and to matters of every day observation.

We must know that a train of cars passing over iron or steel rails at a speed of thirty miles an hour does not do so without noise. We must know, too, that where a person possessing good eye-sight, located within one hundred feet of the track, has an unobstructed view of such track for a distance of near one-half mile, he can not fail to see an approaching train before it reaches him, if he looks attentively, and that if he is possessed of ordinary hearing he could not fail to hear it when listening attentively, if running at the speed of thirty miles an hour. When about to enter upon the crossing, looking in one direction only is not the diligence required by the law, for the law requires him to look in both directions if it is possible to do so. As a rule, it is not necessary to stop and listen or look where approaching

danger can be otherwise ascertained, but one approaching such crossing must exercise such care as will enable him, under the circumstances, to inform himself of the extent of the danger attending the crossing the track if he can reasonably do so. This appellant did not do. In our opinion, the facts in this case do not bring it within the class of cases where the court will determine the *kind* of care to be used, and leave the jury, under proper instructions, to determine the *amount;* but it belongs to that class where the court will adjudge, as matter of law, that the party was negligent.

Having reached this conclusion, it follows that the superior court of Marion county, in general term, did not err in holding that the evidence in the cause was not sufficient to sustain the verdict of the jury.

Some questions are made and argued in relation to the refusal of the court below to give to the jury certain instructions asked by the appellee, but having reached the conclusion that the evidence does not support the verdict of the jury, we deem it unnecessary to examine or decide these questions.

The judgment of the superior court of Marion county, at general term, is affirmed.

ELLIOTT, J., took no part in the decision of this case.

Filed Feb. 18, 1891; petition for a rehearing overruled May 14, 1891.