LUTZ, ADMINISTRATOR *v.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 8,512.   Filed May 13, 1915.]

1. APPEAL.—*Ruling on Motion for Judgment on Answers to Interrogatories.—Scope of Review.*—In determining whether the trial court erred in sustaining a motion for judgment on the jury's answers to interrogatories notwithstanding the general verdict, the court on appeal is confined to a consideration of the facts pleaded, the answers to the interrogatories, and the general verdict. p. 18.

2. TRIAL. — *Answers to Interrogatories. — Conflicting Answers.*— Conflicting answers to interrogatories submitted to the jury nullify each other and have no controlling influence against the verdict. p. 23.

3. RAILROADS. — *Crossing Accidents. — Contributory Negligence. — Answers to Interrogatories.*—In an action for the death of a person killed at a railroad crossing, the burden on the question of contributory negligence was on defendant, and, since the verdict was a finding for plaintiff on that issue, the answers of the jury to interrogatories on that subject, to be sufficient to overcome the verdict, must be such as to affirmatively show a state of facts which compels the conclusion that decedent was guilty of negligence contributing to her injury and death, regardless of any evidence that might have been introduced tending to support

Lutz *v.* Cleveland, etc., R. Co.—59 Ind. App. 16.

the verdict, or tending to explain such answers and reconcile them with the verdict. p. 23.

4. RAILROADS. — *Crossing Accidents.* — *Contributory Negligence.*— Whether a person killed in a railroad crossing accident was guilty of contributory negligence must be determined from all the facts and circumstances' surrounding him at the time he was required to act, and from a consideration of whether, so circumstanced and situated, he exercised the kind and degree of care that would be used by an ordinarily prudent person. p. 23.

5. RAILROADS. — *Crossing Accidents.* — *Contributory Negligence.*— *Answers to Interrogatories.*—In an action for the death of an old lady who was struck by defendant's train at a street crossing, where the answers to interrogatories did not dispute the finding of the general verdict that decedent looked and listened before attempting to cross the tracks, and neither heard nor saw any approaching train, but showed that after crossing the tracks she walked along the side thereof in the direction of the approaching train, and that the train, which was approaching at forty to fifty miles an hour, could then have been seen for a distance of 800 feet, were insufficient to overcome the general verdict on the ground of contributory negligence, in the absence of any finding as to how long decedent faced in the direction of the approaching train, or as to what caused her to face in that direction, the distance she walked parallel to the track, or where she was when she first saw the train, and in view of her advanced age, the facts and circumstances surrounding her at the time, and the fact that evidence might have been introduced that would have completely exonerated her from any inference of contributory negligence. p. 23.

6. DEATH.—*Verdict.*—*Damages.*—*Pecuniary Loss.*—In an action for the death of a person killed by a train at a crossing, answers by the jury to interrogatories that there was "no evidence" as to what was the actual pecuniary loss to decedent's children by reason of decedent's death, and as to what the items, if any, of such pecuniary loss were, were not equivalent to a finding that there was no pecuniary loss, and were not in conflict with the general verdict for plaintiff. p. 25. '

From Clark Circuit Court; *William C. Utz,* Special Judge.

Action by Burdette C. Lutz, administrator of the estate of Lydia A. Stierheim, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*George H. D. Gibson* and *H. Willard Phipps,* for appellant.

*Frank L. Littleton, Stannard & Howard, C. E. Cowgill* and *L. J. Hackney,* for appellee.

HOTTEL, C. J.—Appellant brought this action against appellee to recover damages for the death of his decedent, who was struck and killed by one of appellant's trains at a public street crossing in the town of Charlestown. The issues of fact were presented by a complaint in two paragraphs and an answer in general denial. There was a trial by jury which resulted in a general verdict in favor of appellant for $2,300. With this verdict the jury returned answers to interrogatories, and, on appellee's motion the court rendered judgment on such answers in favor of appellee. The ruling on this motion is the only error assigned and relied on for reversal presented by appellant. Whether such ruling constitutes reversible error depends on whether there is irreconcilable conflict between such answers and the general verdict, and in determining this question we are confined to a consideration of the facts pleaded, the answers to interrogatories and the general verdict.

We therefore first indicate the facts pleaded affecting the questions presented by the appeal. For this purpose, the substance of the averments of the second paragraph of complaint will be sufficient. Such paragraph alleges that at the time decedent was run over and killed, appellee, by virtue of a contract, lease and traffic arrangement, was operating its trains over the tracks and right of way of the Baltimore, Ohio and Southwestern Railroad Company; that the tracks pass through the town of Charlestown and cross nearly at right angles Water Street in the town, which runs in an eastwardly and westwardly direction; that the street is much travelled and used by the public at all times; that at the point where the railroad crosses the street there is a

narrow cut, fifteen feet deep, which cut extends along the right of way for more than a half mile from the north side of the street; that the railroad tracks are laid on the bottom of the cut; that the street crossing is graded down to a level with the railroad track and crosses the track at grade; that for a distance of 100 feet on either side of the track there is a cut in the street to bring it down to the level of the crossing; that the cut has abrupt walls on both sides thereof; that at a distance of about 200 yards both north and south of the street crossing, the railroad makes an abrupt and sharp curve to the west; that on the north side of the street and west of the railroad track there was a large dwelling house, trees and fencing; that dwelling houses were located on both sides of the track and north of the crossing for a distance of half a mile, with lights in them at nighttime; that all of said conditions herein stated existed at the time of the injury; that on the day of the injury, appellant's decedent was going along Water Street and attempted to cross the railroad; that on account of the cut in the street and railroad right of way, the curve in the track, the buildings, trees, and fencing aforesaid, the decedent, as she approached the crossing, was unable to see the approaching train; that she was on foot and traveling on the south side of the street, and when she approached near the track she stopped, looked and listened and used all due care to ascertain if a train was then coming along the track toward the crossing and nearly approaching the same, and not seeing or hearing any train approaching the crossing at the time, went upon the railroad track at such crossing and while thereon, was immediately run down and killed by a train operated by appellee approaching from the north; that appellee negligently failed to give the statutory signals when approaching such crossing, and carelessly and negligently ran its train at a high rate of speed, to wit, sixty miles an hour; that on account of the high rate of speed and on account of appellee's failure to give warning of the approach of its

train to the crossing, decedent did not see or hear the train until it was too late for her to extricate herself and get off the track and avoid being struck and killed by such train, all without any fault on her part.

It is first contended by appellee in support of the judgment rendered by the trial court that the answers to interrogatories show that appellant's decedent was guilty of contributory negligence. The answers affecting such question show in substance that appellant's decedent was a widow, sixty-six years of age, blind in the left eye; that at the time in question, and for ten years previous thereto, she lived on the south side of Water Street, west of the railroad and about ninety feet from the crossing; that at the time in question she was going to her daughter's who lived on the opposite side of the railroad and about 300 feet from the home of the decedent; that when she started to go from her home across to the home of her daughter she had a woolen scarf tied over her head and under her chin; that the injury happened at the intersection of the railroad tracks and Water Street on December 15, 1908, at about 6:30 p. m.; that the headlight on the locomotive was burning at the time it approached and passed over Water Street crossing; that appellee's train when it passed over the crossing in question was running from forty to fifty miles per hour; that the engineer sounded a station signal when about 3,000 feet north of Water Street, a loud blast that could be and was heard at Water Street crossing; that no crossing signal was sounded or bell rung as the train approached the crossing; that the train No. 33 received orders at Blotcher to take the passing track at Charlestown in order to allow the Baltimore and Ohio Southwestern north bound train No. 20 to pass; that appellee's train took such siding and was passed by such north bound train; that decedent before she was struck, crossed the track on the south side of Water Street and went to a point on the east side of the track near the east rail and immediately thereafter proceeded to walk

along the east side of the track northwardly on a line about parallel with the track and within four feet thereof to the point where she was struck by the train; that there was no evidence as to the distance she walked northwardly parallel with such track; that from a point three feet east of the east rail of said track to a point twelve feet west of the west rail of such track and parallel therewith there was an unobstructed view of the headlight of a train approaching from the north for a distance of 800 feet from Water Street; that the train which struck decedent was a regular passenger train which had passed over the Water Street crossing daily for some time immediately before the accident and decedent was familiar with Water Street crossing and with the operation of trains across the crossing; that there was an electric light burning one square north of Water Street crossing and within fifteen feet of the track at the time decedent was killed; that, at the time decedent was struck by said train, there were lights shining from windows of houses both on the east and west of the track and near the railroad track for a distance of two squares north of the street; that the engineer operating the train on the night in question, if he had been looking south and watching the track ahead of him, with his engine under control and running the same at the rate of eighteen to twenty miles an hour, could have stopped the train.

In this narration of the substance of the answers to interrogatories, we have given to those throwing light on the question of the contributory negligence of decedent a construction as favorable to appellee as the answers will permit and more favorable than appellant is willing to concede. Indeed, it is contended by appellant that certain of the questions and answers are conflicting and inconsistent and therefore antagonize each other and should be disregarded. The interrogatories which appellant thus criticises are as follows: "2. Where was the said Lydia Stierheim, and where was she going at the time she received her said in-

juries? A. On railroad track at intersection of Water Street going to Mrs. Morrow's. * * * 33. Before Lydia Stierheim was struck by the train, did she cross defendant's track on the south side of Water Street and go to a point on the east side of the track? A. Yes to a point near the east rail. * * * 34. If you answer interrogatory 33 in the affirmative, state whether immediately thereafter said Lydia Stierheim proceeded to walk northwardly on a line about parallel with the track to the point where she was struck by the train. A. Yes. * * * 35. If you answer interrogatories 33 and 34 in the affirmative, state whether while she was so walking northwardly on the street the said Lydia Stierheim was east of the railroad track and within four feet thereof. A. Yes. * * * 36. If you answer interrogatories from 33 to 35, inclusive, in the affirmative, state whether after she crossed the track from west to east and while she was so walking northwardly on the street, said Lydia Stierheim traveled from 20 to 25 feet before she was struck by the train. A. No evidence. * * * 37. If you answer interrogatory in the negative, then state how far Lydia Stierheim walked northwardly after she had crossed the railroad track before she was struck by the train. A. No evidence as to distance. * * *."

Appellant claims, in effect, that interrogatory No. 2 shows that decedent was struck while on appellee's track, while interrogatories Nos. 33, 34 and 35, show that she had crossed over the track and was struck at a point on the street east of the track; that No. 34 shows that decedent, after crossing the track, proceeded to walk northwardly about parallel with the track to the point where she was struck, while Nos. 36 and 37 show that there was no evidence that decedent had walked, or was walking, northwardly on the street, or parallel with the track, at such time, and hence that there is such conflict in these answers, that, for the purposes of the question under consideration, they must be disregarded. It is true, that answers to interrogatories

which are themselves in conflict nullify each other and hence have no controlling influence against the general verdict. *Cleveland, etc., R. Co.* v. *Federle* (1912), 50 Ind. App. 147, 152, 98 N. E. 123, and cases cited.

It is also true, we think, that the answers above indicated are not entirely free from ambiguity and uncertainty. However, giving to them and to the other interrogatories, the meaning and interpretation which we have indicated above, do they, in fact, show that decedent was necessarily guilty of contributory negligence? The burden of such issue was on appellee, and before such interrogatories can be permitted to overturn the general verdict, which was a finding for appellant on this issue, the court must be able to say that such interrogatories affirmatively show a state of facts which necessitates the conclusion that decedent was guilty of negligence contributing to her injury and death, regardless of any and all evidence that might have been introduced under the issues tending to support the general verdict on such issue, or tending to explain such answers and reconcile them with such verdict. *Jeffersonville Mfg. Co.* v. *Holden* (1913), 180 Ind. 301, 307, 102 N. E. 21; *Peru Heating Co.* v. *Lenhart* (1911), 48 Ind. App. 319, 331, 332, 95 N. E. 680; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 301, 302, 53 N. E. 235.

The conduct of the injured party in such cases must be determined from all the facts and circumstances surrounding him, or her, at the time he or she was required to act, and the ultimate question to be determined is, whether he or she so circumstanced and situated exercised the kind and degree of care that would be used by an ordinarily prudent person when so circumstanced and so situated.

In the instant case the complaint alleged, and the general verdict found, that decedent before attempting to cross appellee's tracks stopped, listened and looked both ways for approaching trains, and neither saw

nor heard any train. Nothing appears in the answers to interrogatories to dispute this finding of the general verdict. It follows that decedent can not be said to have been negligent in attempting to cross appellee's tracks. Appellee, in effect, concedes this to be true, but insists that such answers affirmatively show that decedent after crossing such tracks was walking along the side thereof facing the approaching train and hence could have seen such train and was guilty of negligence contributory to her death. The answer to this contention is, that such answers do not show how long decedent faced in the direction of the approaching train, nor what caused her to face in that direction, nor the distance she walked parallel with the track, nor do such answers show where decedent was when she first saw the approaching train. They do show that there was another train passing over the main line near this crossing for which the train that struck decedent took the siding. For aught that appears from such answers, there may have been some obstruction immediately in front of decedent that caused her to turn parallel with the track and such other train, or some signal given, or noise made, by it may have attracted her attention at the very instant she was crossing, or immediately after she crossed the track and just as the other train was about to come into view, and that, when she turned and saw the approaching train, it was too late to reach a place of safety.

The answers show that if appellant's decedent had looked at the most favorable place for looking, viz., when within a space three feet east of the east rail of the track and twelve feet west of the west rail thereof, she could have seen the locomotive for a distance of 800 feet at most. The train was then approaching her at the rate of forty to fifty miles an hour, and if she had seen it when it first came into view she would have had but twelve to fourteen seconds to get out of its way. Taking into consideration decedent's age, the time and place where she was injured, and all the

facts and circumstances surrounding her at the time, we think that under the averments of the complaint, evidence might have been introduced that would have completely exonerated her from any inference of contributory negligence arising from the answers here made by the jury to the interrogatories propounded to it, and completely reconciled such answers with the general verdict. *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 70 N. E. 985; *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 37 N. E. 150, 38 N. E. 594; *Chicago, etc., R. Co.* v. *Turner* (1904), 33 Ind. App. 264, 69 N. E. 484; *Pennsylvania Co.* v. *Coyer* (1904), 163 Ind. 631, 72 N. E. 875; *Rice* v. *City of Evansville* (1886), 108 Ind. 7, 9 N. E. 139, 58 Am. Rep. 22; *Shuck* v. *State, ex rel.* (1893), 136 Ind. 63, 35 N. E. 993.

It is further contended by appellee that the answers to interrogatories show that the beneficiaries under the law have suffered no pecuniary loss. In support of this contention appellee relies on interrogatories Nos. 31 and 32 and answers thereto. They are as follows: (31) ''Considering the said Lydia Stierheim's age at the time of her death, the increased care and attention she would have required as she advanced in years, and her increasing disability for work, what was the actual, pecuniary loss to her said children, or to any or either of them, by her said death? A. No evidence.'' (32) ''Considering the said Lydia Stierheim's age at the time of her death, and the increased care and attention she would likely have required as she advanced in years, and her increasing disability for work, and considering the reasonable value and cost of her support, maintenance and care, if the decedent's said children any or either of them, sustained any pecuniary loss by the death of the said decedent, state fully and particularly the items of such loss and value thereof? A. No evidence.'' Appellee insists that the answer of ''No evidence'' to these

interrogatories was in legal effect a finding that no pecuniary loss was sustained.

As a general rule an answer of "No evidence" to an interrogatory submitted to a jury is a finding against the party having the burden as to the proposition stated in such interrogatory. *William Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 481, 90 N. E. 1014, 92 N. E. 337, Ann. Cas. 1913 A 49, and cases cited. Assuming, without deciding, that such interrogatories were proper, it will be observed that by them the jury was not asked the direct question as to whether decedent's children had suffered any pecuniary loss by her death, but such interrogatories enumerated other facts, or elements, which may have been proper to consider in determining the question of pecuniary loss, but of which there may have been no evidence. It follows that such answers do not necessarily mean that there was no evidence that decedent's children suffered no pecuniary loss on account of her death. The general verdict found that they did suffer such loss, and the answers to interrogatories are not necessarily in conflict therewith. It follows from what we have said that the trial court erred in sustaining appellee's motion for judgment on the answers to interrogatories and that on account of such error the judgment below must be reversed; but, while such answers might have been reconciled with the general verdict by evidence admissible under the issues, they are of such a character as to indicate that the ends of justice will be better served by this court ordering the court below to sustain the motion for new trial rather than by ordering a judgment on the general verdict. The judgment below is therefore reversed with. instructions to the trial court to grant appellant's motion for new trial and for any other proceedings not inconsistent with this opinion.

NOTE.—Reported in 108 N. E. 886. As to duty of traveler on highway to use his senses of seeing, hearing, etc., to avoid dangers at crossings, see 90 Am. Dec. 780. As to measure of damages recov-

erable by wife or child for death of husband or parent by wrongful act, see 3 Ann. Cas. 103; 16 Ann. Cas. 931. See, also, under (1) 38 Cyc. 1927; (2) 38 Cyc. 1926; (3) 38 Cyc. 1927; 38 Cyc. 1915 Ann. 1902–new; 33 Cyc. 1070; (4) 33 Cyc. 981; (5) 33 Cyc. 1142; (6) 38 Cyc. 1024.