## New York, Chicago and St. Louis Railroad Company v. Leopold, Administrator.

[No. 10,264.    Filed May 14, 1920.]

1. Negligence.—*Contributory Negligence.*—*Answers to Interrogatories.*—Before the jury's answers to interrogatories in an action for wrongful death can overturn the general verdict on the issue of contributory negligence, they must affirmatively show a state of facts which establish such negligence, regardless of any and all evidence that might have been introduced under the issues tending to support the general verdict, or tending to explain such answers and reconcile them with the general verdict.  p. 311.

2. Railroads.—*Crossing Accidents.*—*Notice of Danger.*—*Contributory Negligence.*—Railroad crossings are in themselves a warning of danger, and all persons approaching the same must exercise reasonable care for their own protection, and, if they fail to do so, and are thereby injured, they will be deemed guilty of contributory negligence.  p. 315.

3. Railroads.—*Crossing Accidents.*—*Duty of Traveler on Highway to Use Due Care.*—*Looking and Listening.*—A traveler upon a public highway, in attempting to pass over a railroad crossing, must look and listen attentively for the approach of trains, and, if by the exercise of reasonable care, he could have seen the approach of a train by looking in time to have avoided injury by reasonable effort, it will be presumed, if he is injured, that he either did not look, or, if he did look, that he did not heed what he saw.  p. 315.

4. RAILROADS.—*Crossing Accidents.—Duty of Traveler on Highway to Look and Listen.*—Though reasonable care on the part of a traveler on a public highway about to enter upon a railroad crossing does not require him to look and listen at any precise distance from the crossing, it does require him to exercise reasonable care to select a place where such acts will be reasonably effective. p. 315.

5. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Right to Assume Obedience to Law.—Duty of Traveler on Highway to Look and Listen.*—Though a traveler on a public highway about to enter upon a railroad crossing has the right, within reasonable limits, to assume that a railroad company will signal the approach of its train to a crossing as required by statute, failure to do which is negligence *per se*, he is not thereby relieved from the duty of looking and listening to ascertain for himself whether a train is approaching. p. 315.

6. RAILROADS.—*Crossing Accidents.—Contributory Negligence.*— In an action against a railroad company for the death of plaintiff's decedent at a crossing, where the evidence showed that decedent approached the crossing traveling in a buggy on a clear day at a point where his view was unobstructed for a sufficient distance to enable him to see the train in time to avoid injury, *held* that decedent was guilty of contributory negligence as a matter of law. p. 316.

7. NEGLIGENCE.—*Contributory Negligence.—Where Question of Law.*—Where the facts showing contributory negligence are so convincing that ordinarily prudent, impartial and sensible men could reach but one conclusion, the question of contributory negligence is a matter of law. p. 317.

8. NEGLIGENCE.—*Contributory Negligence.—Last Clear Chance Doctrine.—Applicability.*—Where the want of care on the part of a traveler about to cross a railroad crossing consists in a failure to discover his own danger from an approaching train, and the want of care on the part of the railroad employes consists of a failure to observe the traveler's dangerous situation and such want of due care on the part of both continues until the injury occurs, or becomes so imminent that neither can prevent it, the doctrine of last clear chance does not apply. p. 317.

From Pulaski Circuit Court; *William C. Pentecost,* Judge.

Action by Harry Leopold, administrator of the estate of Joseph Castleman, deceased, against the New York, Chicago and St. Louis Railroad Company. From a

judgment for plaintiff, the defendant appeals. *Reversed.*

*Walter Olds, Horner & Thompson* and *D. H. Howe,* for appellant.

*William J. Reed,* for appellee.

BATMAN, J.—This is an action by appellee against appellant to recover damages on account of the death of Joseph Castleman. The complaint is in a single paragraph and alleges in substance, among other things, that while said Castleman was riding in a one-horse, covered buggy, and attempting to pass over a crossing made by the intersection of appellant's railroad tracks with a public street in the town of Knox, appellant negligently backed an engine and tender over said crossing at a high and dangerous rate of speed, without keeping any outlook, and without ringing any bell, or sounding any whistle, or giving any other warning of the approach of said engine and tender, thereby striking and killing said Castleman. Appellant answered the complaint by a general denial. The cause was submitted to a jury for trial, resulting in a verdict in favor of appellee for $4,800. The jury also returned their answers to certain interrogatories submitted by the court. Appellant's motion for judgment on the answers to the interrogatories notwithstanding the general verdict was overruled. Appellant then filed a motion for a new trial, which was overruled after appellee had entered a remittitur of $1,500. The action of the court in overruling said motions are the only errors assigned on appeal.

Appellant, in support of its contention that the court erred in overruling its motion for judgment on the answers to the interrogatories notwithstanding the

1. general verdict, has cited certain facts found thereby relating to the decedent's knowledge of

312    APPELLATE COURT OF INDIANA,

New York, etc., R. Co. *v.* Leopold, Admr.—73 Ind. App. 309.

the crossing, the direction from which he approached the same, the distances within which he could have seen the approaching engine at various points, the rate of speed at which he was traveling, and the rate of speed at which the engine approached the crossing, and the absence of anything to obstruct his view. It asserts that these facts show that appellee's decedent was guilty of contributory negligence. Before the answers to the interrogatories can be permitted to overturn the general verdict on such issue, the court must be able to say that such answers affirmatively show a state of facts which necessitates the conclusion that appellee's decedent was guilty of negligence contributing to his injury, regardless of any and all evidence that might have been introduced under the issues tending to support the general verdict on such issue, or tending to explain such answers and reconcile them with the general verdict. *Lutz* v. *Cleveland, etc., R. Co.* (1915), 59 Ind. App. 16, 108 N. E. 886. Neither the facts cited by appellant, nor any others found by the answers to the interrogatories, preclude the existence of evidence which would sustain the finding of the jury in favor of appellee on the question of contributory negligence. The case of *Waking* v. *Cincinnati, etc., R. Co.* (1920), 72 Ind. App. 401, 125 N. E. 799, cited by appellee in its oral argument to sustain its contention, differs from the instant case in this, that it was expressly found by the interrogatories in that case that there was nothing to prevent the decedent, in the exercise of reasonable care in approaching the crossing, from looking in the direction of the approaching train and seeing the same in time to have stopped his automobile in a place of safety. For the reason stated the court did not err in overruling the motion under consideration.

Appellant contends that the court erred in overruling its motion for a new trial. It bases this contention in

part on the ground that the verdict is not sustained by sufficient evidence. An examination of the record discloses that there is substantial evidence to support the answers to the interrogatories, which find the following facts: Appellee's decedent together with his wife and stepson were struck and killed by an engine of appellant at a street crossing in the town of Knox, Indiana, on September 23, 1916. At the place where said decedent met his death, appellant's railroad crosses John street diagonally. Just before the accident the decedent with his wife and stepson were approaching said crossing along said street from the west, riding in a buggy drawn by a single horse driven by said decedent at a speed of three miles per hour. The decedent knew that appellant's railroad ran through said town, and crossed John street at the point where he was struck by its engine. As he approached said crossing for the purpose of passing over the same on his way toward the east, it was a bright clear day, and the railroad track at such crossing was in plain view. At said time the nearest building or obstruction between appellant's railroad tracks and John street was 238 feet west of said crossing. While said decedent was approaching said crossing from the west, appellant started one of its engines eastward toward said crossing from a point about 1,400 feet therefrom, running the same backwards, at a speed of twenty to thirty miles per hour, for the purpose of coupling onto a train on the east side thereof. When said engine reached said crossing, it collided with the decedent's horse and buggy as he was in the act of passing over the same. When the decedent was approaching said crossing, and had reached a point 100 feet west thereof, he could have seen said engine approaching at any point within 475 feet of the same. As he approached nearer said crossing more of said track could be seen, and when he reached a point within fifty feet

of the same he could have seen said engine as it approached said crossing, within a distance of 800 feet therefrom, if he had looked westward along appellant's railroad track. At the time said engine approached said crossing the engineer thereof was on the north side of the cab thereon, looking eastward along the line of the track in advance of his engine, said north side being the engineer's side of said cab. There was a fireman on said engine, whose duties required him to keep up steam for use in operating the same. As the engine approached the crossing the fireman was engaged in putting coal on his fire, but prior thereto he had kept an outlook in advance of the engine. Neither the engineer nor the fireman saw the decedent approach said crossing, and neither of them knew when the engine struck his horse and buggy. From the time the engine started to back eastward on appellant's track until it collided with the decedent, the bell upon the engine was not rung continuously, and there was no evidence that the fireman sounded the whistle thereon three times distinctly. During the last 200 or 300 feet which the decedent traveled before he reached the crossing, one of the witnesses was riding in a buggy forty or fifty feet behind the decedent. This witness saw the engine approaching and before the collision called out a warning to the decedent loud enough that it was heard at a distance of 250 feet east of the crossing, but the decedent gave no heed thereto. In addition to the foregoing facts, the undisputed evidence shows that John street in said town of Knox extends east and west; that appellant's railroad track crosses said street, running from the northwest to the southeast, at an angle of eighteen degrees and forty minutes; that said crossing is not closely surrounded by buildings or other obstructions, which would prevent a view of approaching trains by persons using said highway; that there is no building or other perma-

NOVEMBER TERM, 1919.	315

New York, etc., R. Co. *v.* Leopold, Admr.—73 Ind. App. 309.

nent obstruction to prevent a view of appellant's track in a northwesterly direction from said crossing for a distance of 475 feet when on John street at a point 100 feet west thereof; that in approaching nearer said crossing such unobstructed view in said direction increases gradually to a distance of 1,350 feet when the center of appellant's railroad track at said crossing is reached; that said view was open to appellee's decedent on the occasion in question until he entered upon said crossing and collided with appellant's engine; that as the decedent approached said crossing and entered upon the same he "seemed to be busy talking or something."

It is well settled that railroad crossings are in themselves a warning of danger, and all persons approaching the same must exercise reasonable care for their own protection and, if they fail to do so and are thereby injured, they will be deemed guilty of contributory negligence; that travelers upon a public highway, in attempting to pass over a railroad crossing, must look and listen attentively for the approach of trains and, if a traveler, by the exercise of reasonable care, could have seen the approach of a train by looking in time to have avoided injury, by the use of reasonable efforts, it will be presumed, in case he is injured by a collision therewith, that he either did not look, or, if he did look, that he did not heed what he saw; that while the exercise of reasonable care on the part of a traveler on a public highway about to enter upon a railroad crossing does not require him to look and listen at any precise distance from the crossing, it does require him to exercise reasonable care to select a place where such acts will be reasonably effective; that while a traveler has a right, within reasonable limits, to assume that a railroad company will give the signals required by statute in approaching a highway crossing, and a failure so

to do is negligence *per se,* such negligence will not relieve a traveler on such highway about to enter upon such crossing from the duty of looking and listening to ascertain for himself whether or not a train is approaching. *Waking* v. *Cincinnati, etc., R. Co., supra,* and cases there cited.

When the facts of this case, as stated above, are considered in the light of these well-established rules, we cannot avoid the conclusion that the negligence 6. of appellee's decedent contributed proximately to his death. The established facts show that he approached the crossing on the occasion in question in the light of a clear day, with a knowledge of its location; that he had an unobstructed view of the track in the direction from which the engine came for a distance of 475 feet from the crossing when he was 100 feet therefrom; that such view increased as he approached such crossing until he could have seen, if he had looked, at least 1,000 feet along such track while still in a place of safety; and that the engine which struck him was within such distance while he was traveling said 100 feet at a speed of three miles per hour, or at least the greater portion of said time. Although appellant's decedent may not have known of the presence of such engine and that it was liable to approach the crossing at such time, still it was his duty to use ordinary care in looking for the approach of some train. Such care required that he anticipate the approach of a train traveling at a rapid rate of speed, as well as for the approach of a detached engine traveling at a slower rate of speed —as there was no evidence of any ordinance or rule limiting the speed of trains at that place—and to act accordingly. He must be held to have known, as a matter of common knowledge, that a speed of thirty miles per hour is not an unusual speed for trains and, under the evidence, that a train might be lawfully approach-

ing such crossing at even a greater speed. He must have known that he was traveling at a speed of approximately three miles per hour, or at least at a speed very much slower than a train might be approaching such crossing. With this knowledge, ordinary care would require that he should look for the approach of a train at some point near enough to the crossing that he could pass over the same, without being endangered from the fact that a train was approaching at a much greater speed than he was traveling. It is manifest from the facts stated that the decedent had ample opportunity to make such observation, and that he did not look for the approach of a train from the northwest, or, if he did look, that he either failed to use reasonable care in selecting a place to do so, or neglected to heed what he must have seen. This being true, he cannot recover, although such failure may have been the result of mental absorption, as the evidence indicates. *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149; *Mann* v. *Belt, etc., R. Co* (1891), 128 Ind. 138, 26 N. E. 819. The facts relating to the

7. contributory negligence of appellee's decedent are so convincing that we are led to believe that ordinarily prudent, impartial and sensible men could not reach a different conclusion from the one we have announced. The question as to such negligence is therefore one of law. *Pittsburgh, etc., R. Co.* v. *Dove* (1916), 184 Ind. 447, 111 N. E. 609.

Appellee seeks to have the verdict sustained by an application of the doctrine of last clear chance, but we cannot agree with his contention in that regard.

8. This court, in the case of *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091, in considering such doctrine, stated the following rule with reference thereto: "If the want of care on the part of the plaintiff consists in

a failure to discover his own danger, and if the want of care on the part of the defendant consists of a like failure to observe the dangerous situation of the plaintiff, and if such want of due care on the part of both continues until the injury occurs, or becomes so imminent that neither can prevent it, the plaintiff cannot recover." An application of this rule to the facts of this case makes it apparent that the doctrine in question cannot be successfully invoked by appellee.

Appellant has presented other reasons for a new trial, but, as they relate to alleged errors that will probably not occur on another trial, we do not pass upon the questions raised thereby. For the reason stated, the judgment is reversed, with instructions to sustain appellant's motion for a new trial, and further proceedings consistent with this opinion.