## PITCAIRN ET AL. *v.* HONN

[No. 16,501.   Filed March 24, 1941.   Rehearing denied May 6, 1941.   Transfer denied October 7, 1941.]

*Crumpacker & Friedrich* and *Stanley A. Tweedle,* all of Hammond, for appellants.

*Merritt D. Metz* and *Straley Thorpe,* both of Hammond (*Thorpe, Bamber & Harrison,* of Hammond, of counsel), for appellee.

BLESSING, J.—This is a suit by appellee against the appellants for damages on account of personal injuries growing out of a collision of an automobile in which the appellee was an occupant and a freight train operated by appellants at a point where the railroad tracks intersected Calumet avenue in the city of Hammond. The complaint was in two paragraphs; the first paragraph charging the violation of three

ordinances of the said city. The ordinances charged
to be violated were:

1. The failure to maintain safety gates at said inter-
section.

2. An ordinance restricting the speed of trains to
twenty-five miles per hour, and

3. An ordinance requiring an arc light over said
intersection of at least two thousand candle power.

This paragraph of the complaint further charged that
by reason of the darkness and the carelessness and
negligent failure on the part of the appellants to prop-
erly light said crossing, the plaintiff was unable to
see said crossing and train and that by reason of the
speed, plaintiff was prevented from having time to do
anything to avoid being struck by the train. The second
paragraph of the complaint charged that the crossing
was unusually perilous and dangerous due to buildings
surrounding the tracks, the lights from heavy traffic,
and the frequency of fog, smoke, and haze. This para-
graph also charged that there were no lights at said
crossing which would illuminate the scene so that the
location of the crossing could be seen by approaching
traffic on said Calumet avenue. To appellee's complaint
the appellants filed a general denial. There was a trial
by jury with a verdict in behalf of the appellee for one
thousand dollars ($1000). Motion for a new trial
by the appellant was overruled and an appeal perfected
to this court. The only question involved in this appeal
is whether or not the appellee was guilty of contribu-
tory negligence as a matter of law. The court below
tried this case on the theory that the appellee and the
driver of the car were engaged in a joint enterprise,
and this theory will be adhered to in the disposition of
this appeal. *Diddel* v. *American Security Co.* (1932),
94 Ind. App. 639, 161 N. E. 689.

The uncontroverted evidence discloses the following conditions surrounding this intersection on the evening of April 20, 1937, the date of the accident. Calumet avenue is a four lane highway of the approximate width of forty-five (45) feet between curbs, running north and south. This avenue is intersected at different places with railroad crossings, with the one in question intersecting said avenue at right angles and running adjacent to and practically parallel with Hudson street in said city, the north line of Hudson street being the south boundary of the right of way of said tracks. There are two mains, the south main being for eastbound traffic and the north main for westbound traffic over said railroad. Twenty-nine (29) feet south of the east main, there is a spur track leading from the mains into a coal yard on the west side of said avenue. Immediately north of said mains and three hundred and forty-nine (349) feet west of the west curb of said avenue, there is a large abandoned building. One hundred and thirty-nine (139) feet south of the center of the east main is a fence. From this fence north to said east main, there are no structures except the watchman's shanty located about ten (10) feet south of the east main and fifteen (15) feet west of the west curb of said avenue. On the east side of the avenue, approximately ninety (90) feet north of the eastbound main, there is a large building having printed on the south side thereof "Hammond Cash Wholesale Grocers." Immediately south of said railroad crossing and on the east side of the avenue, there was a white cross buck sign bearing the words "Railroad Crossing" and below the cross-arms, the word "Danger." Some distance south of this sign, on the righthand side of said avenue, was a round metal disk on which was printed "Danger 6 R.R." Along Calumet avenue in this vicinity, there

were street lights set up upon standards just outside the curb. One of these lights was located on the west side of the street twenty-six and a half (26½) feet north from the center line of the eastbound main; one, seventy-five (75) feet south of the center line of the eastbound main on the east side of the street, and another light of the same character was located on the west side of the street one hundred sixteen and one-half (116½) feet south of the center line of said eastbound main. The rails of the railroad at this intersection were set flush with the concrete pavement, and the street was level for a considerable distance north and south of the railroad tracks intersecting said street. A watchman's shanty was located ten (10) feet south of the eastbound main and fifteen (15) feet west of the west curb of Calumet avenue.

These physical facts are detailed for the reason that both the appellee and the driver of the car testified that as they approached north on Calumet avenue, they were unaware of the presence of a railroad crossing until the automobile which they were occupying was within twenty to twenty-five feet of the freight train going east on the eastbound main. The appellee and driver of the car also testified that they did not see, as they approached the railroad crossing, the metal disk sign nor the cross-arm sign on the east side of the street, nor did they see the watchman's shanty on the west side of the street. The appellee admits, however, that he saw the abandoned building three hundred and forty-nine (349) feet west of the west curb line of Calumet avenue. Appellee also admits that, when from one hundred to one hundred and fifty feet south of the railroad crossing, he saw the building, on the east side of the street and north of the tracks, bearing a sign, "Hammond Cash Wholesale Grocers." In addition, both

of these parties admit that they had been over this crossing before and knew that railroad tracks intersected Calumet avenue, but, upon the night in question, were not acquainted with the exact location of said intersections. The accident occurred about eight-fifty (8:50) p. m.; and due to a misty, foggy rain, visibility was poor. The automobile in which the appellee was an occupant was equipped with good headlights, which were burning; and the speed of the car, as it approached the railroad crossing and up to the time of the accident, was estimated to be twenty-five to thirty miles per hour. While the appellant contends that the pleadings do not raise the issue of a failure to notify appellee of the existence of the crossing, consideration is given to this point because of its bearing upon the care exercised by the driver of the automobile and appellee with respect to approaching trains at this crossing. Innumerable accidents on highways and streets at grade railroad crossings, under varying conditions, have led to many decisions fixing the obligations of persons using such streets and highways.

It is a matter of common knowledge that railroad tracks intersect streets and highways at grade; and our courts have declared, under such circumstances, that the presence of railroad tracks are within themselves a warning of danger. *Evansville etc. R. Co.* v. *Clements* (1904), 32 Ind. App. 659, 70 N. E. 554; *Mann* v. *The Belt Railroad and Stockyard Company* (1890), 128 Ind. 138, 26 N. E. 819.

Conceding that the atmospheric conditions made visibility poor, this court has held that it is negligence as a matter of law for the driver of an automobile to operate it in the nighttime at such rate of speed that it could not be brought to a stop within the distance that objects could be seen ahead of

it. *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708; *Pennsylvania Railroad Co.* v. *Huss* (1933), 96 Ind. App. 71, 180 N. E. 919.

This rule was criticized by our Supreme Court in the case of *Opple* v. *Ray* (1935), 208 Ind. 450, 457, 195 N. E. 81, as being too broad, but the Supreme Court in the same decision uses this language:

> "Statutory provision is made for the maintenance of signs at the side of the highway indicating the approach to a railroad crossing. The signs are maintained for the protection of those using the highway. Reasonable prudence requires that one using the highway take care to observe such signs, and take notice of the proximity of a railroad track, which is of itself notice of danger."

In the case of the *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. (2d) 714, involving the collision of an automobile with a passing train at a highway crossing, the court said:

> "It is a matter of common knowledge that highways in Indiana are frequently intersected by railroads upon which long trains may stand or move. The state provides the crossing signs at the side of the road where other travel signs are maintained as a notice and direction to the drivers of automobiles. Conspicuous warnings are painted upon the pavement. Those who use the highways must take notice of such signs, and so regulate their speed that they may look and see for themselves whether a train is occupying a crossing ahead of them, just as they must look and see a stop sign on the highway indicating a preferential highway ahead."

It would thus appear, from what the Supreme Court has said in the cases of *Opple* v. *Ray* and *New York Central R. R. Co.* v. *Casey, supra,* that its criticism of the rule announced by this court in the Huss and Gillespie cases, *supra,* was not meant to apply to usual hazards and known dangers such as the presence of railroad tracks across public streets and highways.

While a traveler on a highway which is in constant use by the public is accorded the right to assume that such highway is reasonably safe for ordinary travel, no traveler has a right to assume that a public thoroughfare is not intersected at grade by railroad tracks. On the contrary, their common existence requires all travelers to use due care to learn of their presence and to observe signs and warnings established for their protection.

It is apparent, from the circumstances thus far detailed and the law applicable thereto, that both the driver of the car and the appellee failed to exercise the care required by law in discovering the presence of the railroad tracks on which the accident occurred.

Having in mind the physical surroundings at this railroad crossing and the knowledge of the appellee and Paul James, the driver of the car, with respect to the presence of this crossing, we next consider the care exercised by the appellee and Paul James to discover the approach of the eastbound freight train involved in this collision.

The car involved was a 1937, Tudor Plymouth, equipped with good headlights and brakes. The party consisted of Paul James, the driver, Miss Berwanger, who sat at the driver's right, Miss Dubert, who sat to the left in the rear seat, and the appellee, who occupied the center of the rear seat. Thus seated, they started on a pleasure trip. About one half of a mile south of the place where the accident occurred, they entered Calumet avenue, and then proceeded north on the east side of the street until the car was stopped in obedience to a "stop and go" sign which was two blocks south of the railroad crossing. At this point, James and the appellee both observed that southbound traffic on the street was rather heavy, and that there was one car,

approximately one hundred and fifty (150) feet in front of them, traveling north. Appellee and driver, James, both observed the red tail-light on the car in front of them when it was one hundred and fifty (150) feet north of their car. No warning as to the crossing or approaching train was given James by any of the occupants of the car. When the freight train was about two blocks west of the crossing, the watchman left his shanty and went to the north side of the tracks and to the center of the street, where he first flagged the southbound traffic by swinging his lantern to the east and west, and then turned to flag the northbound traffic, at which time the car involved in the collision was some little distance south of the crossing. James testified that he was looking ahead at all times, but he and appellee both testified that they did not see the watchman or his red lantern. On examination in chief, James gave no testimony as to any observations he made for an approaching train at this crossing; but upon cross-examination on this subject, the record discloses the following questions and answers:

"Q. Now, I want to know whether before that time, that is, when you looked and saw it twenty feet away from you, whether before that time you had looked towards the west to see if a train was coming?"

"A. No, I did not."

"Q. You understand my question do you—I say, you understand my question?" "A. Yes, I do."

"Q. If you do not, tell me you do not. See if I understand the facts correctly, up until the engine was twenty feet away from you and you were practically on the track upon which the engine was traveling, up until that time you did not look to the west, is that correct?"

"A. That is correct, yes."

The appellee testified that when they were near the crossing, he was engaged in conversation with Miss Dubert, trying to get her to sing a song; that as they drove along, he glanced or looked toward the northwest and did so after they reached a point one hundred and thirty-nine feet south of the south tracks, between which point and the crossing there were no obstructions to his view to the west. Appellee testified that he had no indication that a train was coming until an instant before the collision, when he looked up and saw the headlight on the engine. He also testified that this was the first time he knew that there was a railroad track in that vicinity. This was partly due, he said, to the fact that he was engaged in visiting with Miss Dubert. At one point, he was asked when he looked to the west again after they had passed the stop light; and in reply said, "I do not remember a thing at the present time until I saw the engine." At another place in the record, he said, "The only opportunity I had to see the train was an instant before the crash." He also testified that he glanced around once in a while, some of the time looking to the northwest; and said in one part of his cross-examination, "When you are out and another person is driving, he is supposed to do the driving." "I left it up to James to do the driving." "I depended upon him to a certain extent." He also said he did not see the cross-arms sign or the metal disc sign on the east side of the street and south of the crossing nor the watchman's shanty on the west side of the street. He did notice, however, the building north of the tracks on the east side of the avenue when he was one hundred and fifty (150) feet south of the tracks and also saw the building that stood three hundred and forty-nine (349) feet west of Calumet avenue on the north side of the tracks.

The train consisted of the engine, tender, and forty to forty-four freight cars, and was traveling from twenty-five to thirty miles per hour. The automobile involved in this accident was traveling from twenty-five to thirty miles per hour and did not slow down before the crash.

We have set out the controlling facts surrounding this accident; and the question we have before us is: Does this case fall within that class where this court may say that the appellee was guilty of contributory negligence as a matter of law?

The negligence of the railroad company, in violating the ordinances of the city of Hammond, Indiana, may be assumed for the purpose of this opinion; but the negligence of the appellant does not excuse the appellee from the exercise of that care required of him by law for his own safety.

It appears, beyond controversy, that James, the driver of the car, and appellee were both negligent in discovering the presence of the railroad crossing; and, with no knowledge of its location, it is not to be expected that either of them would exercise the care required by law from travelers on the highway to look and listen for an approaching train. James confessed he did not look; and the appellee, although he did look in the general direction from which the train approached, did not look or listen for the purpose of discovering an approaching train because he did not know he was approaching a railroad crossing at the time.

These men knew there were railroad tracks across Calumet avenue but not their exact location. It was their duty under the circumstances disclosed by the evidence to discover the exact location. As was said by this court in the case of *Morley* v. *C. C. C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515,

526, 194 N. E. 806, "If they (referring to appellant and her husband) chose to travel upon a strange highway at night, it was their duty to use care commensurate with the increased hazard, if any." It was the obligation of James and appellee to see the warning signs for this crossing, *New York Central Railroad Co.* v. *Casey, supra;* and, having observed said signs, to approach said crossing on the assumption that there was danger. This they did not do.

The controlling facts are undisputed. Only one reasonable inference can be drawn from them by reasonable men, and the question of contributory negligence is a question of law for the court. *Eckhart* v. *Marion, etc. Traction Co.* (1915), 59 Ind. App. 217, 109 N. E. 224; *Mann* v. *Belt Railroad and Stockyard Company* (1890), 128 Ind. 138, 26 N. E. 819; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. (2d) 284; *Pittsburgh, etc. R. Co.* v. *Dove* (1916), 184 Ind. 447, 111 N. E. 609; *New York, etc. R. Co.* v. *Leopold, Admr.* (1920), 73 Ind. App. 309, 127 N. E. 298.

We hold in this case that the appellee was guilty of contributory negligence as a matter of law, and that the court erred in overruling appellant's motion for a new trial.

Judgment reversed with instructions to sustain appellants' motion for a new trial, and further proceedings consistent with this opinion.

NOTE.—Reported in 32 N. E. (2d) 733.